281 F.3d 404
 Martin CRISTIN aka Danny Stanton,
v.
Edward BRENNAN, Superintendent; the Attorney General of the State of Pennsylvania; the District Attorney for Philadelphia County, Appellants.
 No. 00-1541.
 United States Court of Appeals, Third Circuit.
 Argued November 14, 2000.
 Filed February 27, 2002.
 
 COPYRIGHT MATERIAL OMITTED Marilyn F. Murray (Argued), Thomas W. Dolgenos, Ronald Eisenberg, Arnold H. Gordon, Lynne Abraham, District Attorney Philadelphia, PA, Counsel for Appellants.
 Elizabeth K. Ainslie (Argued) Jennifer A. Diamantis, Schnader, Harrison, Segal & Lewis, LLP, Philadelphia, PA, Counsel for Appellee.
 Before: SLOVITER, AMBRO and WEIS, Circuit Judges.
 OPINION OF THE COURT
 AMBRO, Circuit Judge.
 
 
 1
 We review the grant of a writ of habeas corpus to Martin Cristin by the United States District Court for the Eastern District of Pennsylvania.[1] The appellants are Edward Brennan, Superintendent of the State Correctional Institution at Albion, Pennsylvania, the Attorney General of the Commonwealth of Pennsylvania and the District Attorney for Philadelphia County, Pennsylvania (collectively, the "Commonwealth"). The Commonwealth alleges that the District Court violated 28 U.S.C. § 2254(e)(2) by granting Cristin an evidentiary hearing on the preliminary question of whether his procedural defaults were properly excused.
 
 
 2
 We hold that the granting of an evidentiary hearing in this case to establish the existence of an excuse to procedural default was not in error under § 2254(e)(2). The results of that hearing, however, lead us to conclude that Cristin can establish neither cause and prejudice nor a miscarriage of justice to excuse his failure to appeal from the adverse result of his petition in state court under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons.Stat. Ann. § 9541, et seq. Without in any way impugning the accuracy of the District Court's reasoned disdain for the proceedings that resulted in Cristin's conviction, we must at the same time recognize those principles of constitutional federalism and comity that require petitioners to exhaust their state court remedies before seeking federal habeas corpus relief. See Castille v. Peoples, 489 U.S. 346, 349, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). We therefore reverse the District Court's grant of the writ.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 3
 Martin Cristin[2] and his wife Rosalinda, who is not involved in this habeas action, were convicted by a jury on October 13, 1994, in the Court of Common Pleas for Philadelphia County, Pennsylvania, of two counts each of theft by deception, fortune-telling and criminal conspiracy. Following their convictions, both Cristin and his wife were sentenced to terms of imprisonment of fifteen to thirty years. The trial, conviction and sentencing all proceeded against the defendants in absentia.
 
 
 4
 According to the evidence presented by the Commonwealth at trial, the Cristins established a fortune-telling business in north Philadelphia in early 1992 and advertised it on local television. Cristin would greet customers and answer the phone while his wife, calling herself "Madam Lucia," would then offer fortune-telling services, dispense advice and solicit money. Through that business, the Cristins defrauded two elderly individuals of their life savings, nearly $22,000. Testimony suggested that the fraud resulted in one of those individuals not seeking surgery that would have prevented her eventual blindness. Following investigation by the Philadelphia Police Department and the issuance of warrants for their arrest, the Cristins were separately arrested in Texas, and Martin Cristin was arraigned and released in September 1993. He did not appear at pre-trial hearings and similarly did not appear for trial three times prior to the October 1994 trial in absentia.
 
 
 5
 The Court of Common Pleas found that the Cristins had waived their Sixth Amendment right to confrontation by repeatedly not appearing for trial. That court apparently credited the prosecutor's unsupported arguments that the Cristins would not appear for trial because they were "gypsies" and, as such, "they have access to a network that can take them anywhere in the country." The prosecutor further argued, and the trial court appears to have accepted, that the witnesses were elderly or infirm and that the case could not be indefinitely postponed. According to Cristin's later testimony before Magistrate Judge M. Faith Angell in this habeas action, he did not appear because he believed, from the representations of his attorney, that the charges would be resolved through restitution and that no trial would occur until March 1995.
 
 
 6
 Trial proceeded in absentia on October 11, 1994. Both Cristin and his wife were represented by Vincent Campo, an associate of A. Charles Peruto, Jr. The genesis of this representation is less than clear from the record, but it appears that a different associate of Peruto entered an appearance on behalf of the Cristins without first being properly retained. Following the entry of that appearance, Peruto made various court appearances disclaiming that his office represented the Cristins because they had never paid for services his office rendered. Peruto also represented that the Cristins did not plan to appear for trial. When the court decided to proceed with trial in absentia, Campo represented both Martin Cristin and his wife, although Peruto had protested that joint representation presented a possible conflict of interest. According to Cristin, Campo had only minimal interaction with him before trial, and they had not discussed the substance of the case.
 
 
 7
 At trial, the Commonwealth introduced testimony from the Cristins' victims and their families, and Campo attempted to impeach each. The investigating police officer also testified to the conduct of his investigation. On cross-examination of the officer, Campo elicited that the Cristins were gypsies and that their alleged crimes were consistent with the "confidence games" with which gypsies were associated. Campo's defense theory was, in part, that the Cristins might have believed in their own healing abilities and that, as such, they could not have exhibited the requisite malice toward the victims. On redirect, the officer testified to the allegedly criminal habits endemic to the "gypsy community," including fortune-telling. The jury returned a guilty verdict on all counts. After finding that the Cristins "voluntarily absented themselves from the jurisdiction" and consequentially forfeited their rights to a presentence investigation, mental health evaluation, and allocution, the court sentenced each of them to the maximum permissible terms of imprisonment on each crime, running consecutively, for a total of fifteen to thirty years imprisonment. The period for appeal in criminal matters in Pennsylvania is thirty days, Pa. R.App. P. 903(a), which expired in this case in November 1994 without the filing of a notice of appeal.
 
 
 8
 Cristin voluntarily presented himself to Texas authorities in December of 1994 and began serving his sentence in early January of 1995. He and his wife, both of whom were returned to Pennsylvania, retained Norman Perlberger to represent them following incarceration. Perlberger filed post-verdict motions nunc pro tunc on their behalf in February 1995, which were denied. On March 1, 1995, Cristin filed a petition for relief pursuant to the PCRA, alleging insufficiency of the evidence and constitutional violations of due process, ineffective assistance of counsel, and cruel and unusual punishment. After oral argument on the PCRA issues, the court granted an evidentiary hearing on Cristin's claims, which was originally scheduled for February 29, 1996. The parties, however, agreed to forego that hearing and rest on supplemental briefing.
 
 
 9
 Cristin filed a petition for relief by writ of habeas corpus in the District Court on June 5, 1997. As of that date, slightly more than twenty-seven months had passed since the filing of the PCRA petition and sixteen months had transpired since the date on which the suggested evidentiary hearing would have been held. One week after the filing of the federal habeas petition the PCRA court released its opinion and order denying Cristin relief under the PCRA.[3] Cristin's attorney, Perlberger, sent a letter dated June 18, 1997 to Cristin apprising him of the ruling and advising him that he must appeal by July 12, 1997. That letter implied that the attorney-client relationship between Cristin and Perlberger had been severed and that Perlberger had no intention of filing the appeal.[4] No appeal was taken from the denial of PCRA relief, although the federal habeas petition remained pending before the District Court.
 
 
 10
 Following the docketing of the petition in the District Court, this matter was referred to Magistrate Judge Angell, who found that Cristin's claims were barred under the exhaustion doctrine for his failure to appeal both his conviction and the denial of his PCRA petition to Pennsylvania's appellate courts. The Magistrate Judge concluded that Cristin's claims were procedurally defaulted and that he could establish neither of the two excuses for procedural default — "cause and prejudice" or a "miscarriage of justice."[5]
 
 
 11
 The District Court chose not to accept the Magistrate Judge's analysis, believing that "the issue of a fundamental miscarriage of justice cannot be dismissed out of hand." The Court remanded the case to the Magistrate Judge to hold an evidentiary hearing and file a further report and recommendation. Following an evidentiary hearing at which Cristin, Peruto, the prosecutor, and various court personnel testified, the Magistrate Judge issued findings of fact and a recommendation on February 22, 1999. In that recommendation, the Magistrate Judge found cause and prejudice to excuse Cristin's failures to appeal.
 
 
 12
 The District Court adopted the new findings of the Magistrate Judge. The Court proceeded to conclude that the decision to proceed to trial in absentia, and indeed the whole conduct of the trial itself, were tainted by references to the Cristins' ethnic heritage as gypsies in violation of their Fourteenth Amendment rights to equal protection. The Court further found that Campo's representation of Cristin was constitutionally inadequate due to the dearth of client communication before trial and Campo's defense strategy based on the Cristins' ethnicity. Lastly, the Court concluded that Cristin's fifteen to thirty year sentence resulted in part from ethnic stereotyping at trial and was "a clear violation of the equal protection clause." The Court granted a writ of habeas corpus on April 11, 2000,[6] and the Commonwealth immediately appealed.
 
 
 13
 This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. No certificate of appealability is required for the Commonwealth to appeal the District Court's order. Fed. R.App. P. 22(b)(3). In this habeas appeal, we exercise plenary review over the District Court's legal conclusions and review its findings of fact for clear error. Rios v. Wiley, 201 F.3d 257, 262 (3d Cir.2000); Lambert v. Blackwell, 134 F.3d 506, 512 (3d Cir.1997); Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir.1992); Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir.1989).
 
 II. CRISTIN'S PROCEDURAL DEFAULTS
 
 14
 It is uncontested that Cristin has procedurally defaulted the claims upon which he requests habeas corpus relief by failing to appeal those claims in state court. The procedural default doctrine is closely related to the requirement that petitioners exhaust state remedies before making habeas claims. See O'Sullivan v. Boerckel, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). A prisoner has not exhausted his remedies in state court "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c); see also Rose v. Lundy, 455 U.S. 509, 518-19, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); Ex parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886). No party has suggested that Cristin has the right to continue to pursue his current claims in state court.[7] However, as the Supreme Court pointed out in O'Sullivan, federal courts must "ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts." O'Sullivan, 526 U.S. at 848, 119 S.Ct. 1728 (emphasis in original). The "fairly presented" requirement has long been a component of the exhaustion doctrine and requires that the prisoner present his federal habeas claims at all levels of state court adjudication. See Picard v. Connor, 404 U.S. 270, 275-76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); Swanger v. Zimmerman, 750 F.2d 291, 295 (3d Cir.1984). The failure to "fairly present" federal claims in state court bars the consideration of those claims in federal court by means of habeas corpus because they have been procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Wainwright v. Sykes, 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).
 
 
 15
 As explained by the Supreme Court, "[t]his exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman, 501 U.S. at 731, 111 S.Ct. 2546. By refusing to consider claims that have been procedurally defaulted in state court, the doctrine "encourage[s] state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error." Lundy, 455 U.S. at 518-19, 102 S.Ct. 1198. At the same time, the doctrine facilitates the proper review of the federal claims, for those claims "that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review." Id. at 519, 102 S.Ct. 1198.
 
 
 16
 In this case, Cristin twice failed to present the claims of error he asserts in federal court to the appellate courts of the Commonwealth. Cristin failed to take a direct appeal from his conviction to the Superior Court. A prisoner who fails to take a direct appeal procedurally defaults the review of all federal claims in habeas corpus. See Murray v. Carrier, 477 U.S. 478, 491, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) ("Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and `undercut[s] the State's ability to enforce its procedural rules.'" (citation omitted)).
 
 
 17
 Likewise, Cristin did not appeal the rejection of his PCRA petition to the Superior Court, thereby creating a second procedural default. Coleman, 501 U.S. at 750, 111 S.Ct. 2546. By failing to seek direct review in the Pennsylvania appellate courts, Cristin denied the Commonwealth "an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan, 526 U.S. at 842, 119 S.Ct. 1728 (requiring state prisoners to seek state court review of federal claims even if state appellate review is discretionary). Cristin argues, however, that he should be excused from his failure to appeal because delays in the PCRA process made relief there effectively unavailable. We stated in Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986), that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." In that case, thirty-three months had passed after the petitioner's PCRA filing without resolution. Id. This, we found, excused the petitioner's failure to exhaust his state court remedies. Id. at 356.
 
 
 18
 The thirty-three month delay in Wojtczak remains the shortest delay held to render state collateral proceedings ineffective for purposes of the exhaustion requirement. See, e.g., Coss v. Lackawanna County Dist. Att'y, 204 F.3d 453, 460 (3d Cir.2000) (en banc) (seven year delay), rev'd on other grounds, 532 U.S. 394, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001); Story v. Kindt, 26 F.3d 402, 406 (3d Cir.1994) (nine year delay). Cristin requests that this Court further reduce the threshold of delay making state court processes ineffective. We see no reason to do so. The total time elapsing between Cristin's filing of the PCRA petition on March 1, 1995, and the filing of his habeas petition in federal court on June 5, 1997, is approximately twenty-seven months. During that time, the PCRA court held an oral argument on November 14, 1995, and scheduled an evidentiary hearing for February 29, 1996, although that evidentiary hearing was eventually waived. The PCRA petition was finally denied on June 12, 1997, one week after Cristin filed his habeas petition. While we much prefer that the PCRA process advance more expeditiously, we do not find its delay to have rendered relief for Cristin "effectively unavailable." Indeed, unlike Wojtczak, in which only marginal progress had been made during the thirty-three month pendency of the PCRA petition, the state courts were responsive to Cristin's case, had held argument, and offered a hearing. Cristin only awaited a ruling. Given this activity and the shorter amount of time, we do not find this case analogous to Wojtczak.
 
 
 19
 Moreover, the state court did rule on Cristin's PCRA petition soon after he filed his habeas petition in federal court. Indeed, our cases have instructed district courts to stay their consideration of habeas petitions when previously stalled state proceedings resume. See Walker v. Vaughn, 53 F.3d 609, 615 (3d Cir.1995) ("As a matter of general practice, we assume that a district court which has excused exhaustion but has not yet embarked upon proceedings of substance will stay its hand once there is reliable evidence that the state action has been reactivated."); Burkett v. Cunningham, 826 F.2d 1208, 1218 (3d Cir.1987). Thus, had the District Court been aware of the PCRA court's ruling, it should have stayed the federal proceedings pending Cristin's appeal. Though such a stay was made irrelevant by Cristin's failure to appeal the denial of his PCRA petitions, in these circumstances we cannot state that the PCRA process was ineffective.
 
 
 20
 Having procedurally defaulted any potential habeas corpus claims by failing twice to take an appeal, Cristin must look to the few exceptions available to the procedural default doctrine for salvation of his claims. As noted above, the Supreme Court has explained that, following a petitioner's procedural default, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S.Ct. 2546. To show cause and prejudice, "a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements." Id. at 753, 111 S.Ct. 2546. "To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime ... by presenting new evidence of innocence." Keller v. Larkins, 251 F.3d 408, 415-16 (3d Cir.2001) (citations omitted). Thus, Cristin must establish either "cause and prejudice" for both defaults or demonstrate that a "fundamental miscarriage of justice" will result from his continued incarceration.[8]
 
 
 21
 III. EVIDENTIARY HEARINGS ON PROCEDURAL DEFAULT
 
 
 22
 Before considering whether Cristin can satisfy either of these two excuses to the procedural default rule, we address first the Commonwealth's contention that the District Court should not have granted Cristin an evidentiary hearing on those excuses under 28 U.S.C. § 2254(e)(2).
 
 
 23
 As revised by the 1996 Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), § 2254(e)(2) reads as follows:
 
 
 24
 (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that —
 
 
 25
 (A) the claim relies on —
 
 
 26
 (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
 
 
 27
 (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
 
 
 28
 (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
 
 
 29
 The Commonwealth argues that § 2254(e)(2)'s constraint on a court's power to conduct evidentiary hearings is not limited to the merits of a habeas corpus claim, but limits all hearings in habeas actions. Thus, the Commonwealth submits that because Cristin cannot satisfy the requirements of § 2254(e)(2), the hearing should not have been held and we must excise from our deliberation all facts developed at that hearing. We disagree. For the reasons we explain, it was within the plenary authority of the District Court to order an evidentiary hearing on the subject of Cristin's excuses for his procedural default and § 2254(e)(2) is inapplicable to those hearings.
 
 
 30
 Section 2254(e)(2) was enacted as part of AEDPA, which "amended the federal habeas statute in such a way as to limit the availability of new evidentiary hearings on habeas review." Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir.2000), cert. denied, 531 U.S. 1084, 121 S.Ct. 789, 148 L.Ed.2d 685 (2001). The Commonwealth argues that Cristin cannot establish his entitlement to an evidentiary hearing under § 2254(e)(2) because he cannot show that his "claim" relies upon either (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A). Furthermore, the Commonwealth points out that, even presuming his claim proceeded under one of these rationales, Cristin cannot make the requisite showing "by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." Id. at § 2254(e)(2)(B). Because Cristin has neither attempted to show his actual innocence of the crimes of which he was convicted nor to base his claim on a new rule of constitutional law or a previously undiscovered factual predicate, however, his ability to satisfy § 2254(e)(2)(A) or (B) is not before us and we need not address it.
 
 
 31
 We conclude that the plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level, and therefore the District Court did not err in conducting such a hearing in Cristin's case. Section 2254(e)(2) was not intended to govern all evidentiary hearings in habeas actions. See Williams v. Taylor, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); Love v. Morton, 112 F.3d 131, 136 (3d Cir.1997). Its applicability is limited by the introductory language of subsection (2), which states that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless [the requirements of subsections (A) and (B) are met]." 28 U.S.C. § 2254(e)(2) (emphases added). We reject the Commonwealth's argument that the plain meaning of this introductory language encompasses evidence that might establish cause and prejudice or a miscarriage of justice and that Cristin's failure to develop that evidence before the state courts now bars an evidentiary hearing on the subject.
 
 
 32
 The Supreme Court recognized in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), that district courts are vested with broad power to grant evidentiary hearings in habeas cases. Chief Justice Warren stated for the Court:
 
 
 33
 State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution. Simply because detention so obtained is intolerable, the opportunity for redress, which presupposes the opportunity to be heard, to argue and present evidence, must never be totally foreclosed. It is the typical, not the rare, case in which constitutional claims turn upon the resolution of contested factual issues. Thus a narrow view of the hearing power would totally subvert Congress' specific aim [in passing early habeas legislation], of affording state prisoners a forum in the federal trial courts for the determination of claims of detention in violation of the Constitution. The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary. Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew.
 
 
 34
 Townsend, 372 U.S. at 312, 83 S.Ct. 745. After setting out the plenary power of the courts to conduct evidentiary hearings in habeas actions, the Supreme Court in Townsend went on to describe six circumstances in which the granting of an evidentiary hearing would be "mandatory." Id. at 313, 83 S.Ct. 745.[9] Following Townsend it was generally recognized that district courts had plenary authority to conduct evidentiary hearings in their discretion, constrained only by those six occasions in which a hearing was required. See Campbell, 209 F.3d at 286 (discussing Townsend post-AEDPA); Hakeem v. Beyer, 990 F.2d 750, 770-71 (3d Cir.1993) (discussing Townsend pre-AEDPA); Keller v. Petsock, 853 F.2d 1122, 1129 (3d Cir.1988) (same).
 
 
 35
 Townsend was overruled, but only in part,[10] by Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). Keeney aligned the Supreme Court's standards for the grant of an evidentiary hearing in habeas cases with its standards for the consideration of procedurally defaulted claims generally. Habeas claims that had been procedurally defaulted could only be addressed if the petitioner showed cause and prejudice or a miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (applying "cause and prejudice" to the failure to appeal); Wainwright v. Sykes, 433 U.S. 72, 88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (adopting a "cause and prejudice" standard when the petitioner failed to make a contemporaneous objection). Keeney established that when a petitioner failed to introduce facts in state proceedings, he must "show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure" to supplement the state record with a federal evidentiary hearing. Keeney, 504 U.S. at 11, 112 S.Ct. 1715. Alternatively, a petitioner's failure to develop a factual record was excused "if he can show that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing." Id. at 12, 112 S.Ct. 1715. Thus, the Court in Keeney, by employing the "cause and prejudice" and "miscarriage of justice" standards to the failure to develop a factual record, used the same standards that excuse a litigant's procedural default. Id. at 10, 112 S.Ct. 1715.
 
 
 36
 The result was parallel standards for the bringing of procedurally defaulted claims and the introduction of facts in support of those claims. Id. The Supreme Court intended this uniformity because "little can be said for holding a habeas petitioner to one standard for failing to bring a claim in state court and excusing the petitioner under another, lower standard for failing to develop the factual basis of that claim in the same forum." Keeney, 504 U.S. at 10, 112 S.Ct. 1715.
 
 
 37
 Keeney never applied, however, to all requests for evidentiary hearings in habeas actions. The Court described its holding as relevant only when the petitioner "fail[ed] to develop" the facts of his habeas claim in state court. Keeney, 504 U.S. at 5, 10, 112 S.Ct. 1715. Indeed, because the Keeney standard was intended to mirror the procedural default of habeas claims generally, its application was limited to circumstances in which the material facts were not developed in state court due to the fault of the petitioner. Put differently, Keeney provided only the "correct standard for excusing a habeas petitioner's failure to develop a material fact in state-court proceedings." Id. at 5, 112 S.Ct. 1715.
 
 
 38
 The Supreme Court recently explained that "the opening clause of § 2254(e)(2) codifies Keeney's threshold standard of diligence, so that prisoners who would have had to satisfy Keeney's test for excusing the deficiency in the state-court record prior to AEDPA are now controlled by § 2254(e)(2)." Williams, 529 U.S. at 434, 120 S.Ct. 1479. The Court made clear in Williams that, like Keeney, § 2254(e)(2) only applies when a petitioner "failed to develop" the factual basis of a claim. It interpreted the introductory language of § 2254(e)(2) — "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings" — to require a two-part inquiry. "We ask first whether the factual basis was indeed developed in state court, a question susceptible, in the normal course, of a simple yes or no answer." Id. at 431, 120 S.Ct. 1479. When the answer is "no," the Court went on to attribute to the word "failed" a requirement that the lack of development in the factual record be the fault of the petitioner. "In its customary and preferred sense, `fail' connotes some omission, fault or negligence on the part of the person who has failed to do something." Id. at 431-32, 120 S.Ct. 1479 (citing various dictionaries). Thus, "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Id.; see Love, 112 F.3d at 136; see also Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir.1999); Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir.1998); Cardwell v. Greene, 152 F.3d 331, 337-38 (4th Cir.1998), overruled on other grounds by Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir.2000) (en banc); McDonald v. Johnson, 139 F.3d 1056, 1059 (5th Cir.1998); Burris v. Parke, 116 F.3d 256, 258 (7th Cir.1997).
 
 
 39
 Simply put, Cristin is not in that group that "would have had to satisfy Keeney's test," Williams, 529 U.S. at 434, 120 S.Ct. 1479, because the issue on which the District Court granted him an evidentiary hearing — whether he can establish an excuse for his procedural default — is not one for which he "failed to develop" a record in state court. Even prior to Keeney, it was recognized that a petitioner's procedural default presents a question of federal law. The Supreme Court has "consistently held that the question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question." Johnson v. Mississippi, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (quoting Henry v. Mississippi, 379 U.S. 443, 447, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965)); see also Murray v. Carrier, 477 U.S. 478, 489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (describing the "question of cause" as "a question of federal law"). We cannot generally expect petitioners to present in state court facts they may only need under federal law in a later federal proceeding to excuse a procedural default. Moreover, rarely would a state court afford a petitioner the opportunity to develop the facts establishing cause and prejudice or a fundamental miscarriage of justice to excuse a procedural default, because those phrases have significance only in the context of federal habeas proceedings.[11] For example, in this case, although the procedural default itself obviously occurred in state court, we are aware of no opportunity accorded Cristin in that court to develop facts explaining his two failures to appeal.[12] Indeed, it would be surpassing strange to require Cristin to establish a record in state court about why he is not appealing a particular judgment while simultaneously failing to appeal that judgment.[13] See Love, 112 F.3d at 136 (finding the petitioner did not "fail to develop" the factual basis of his double jeopardy claim in state court because the abrupt entry of a mistrial by the court prevented the development of a record at the time). Such a requirement would pose a Catch-22 for habeas petitioners.
 
 
 40
 Furthermore, we are aware of no case in which either the Keeney standard or its successor, § 2254(e)(2), has been employed to limit whether an evidentiary hearing was available to evaluate whether a petitioner's procedural default may be excused.[14] For example, in Williams v. Turpin, 87 F.3d 1204, 1211 (11th Cir.1996), the Eleventh Circuit ordered a hearing on the petitioner's new factual claims of ineffective assistance of counsel, claims that went to both cause and prejudice excusing his failure to introduce those facts in state court and to substantive habeas relief. In ordering the hearing, the Court noted that Keeney restricted the availability of a hearing on the application of the new evidence to the merits of his petition, but stated that the evidence also went to whether he could excuse the procedural default and that the petitioner was therefore entitled to a hearing on that issue. "Although Williams must show cause before he is entitled to an evidentiary hearing to present the new evidence to support his primary claim of ineffective assistance of trial counsel, Keeney, 504 U.S. at 11-12, 112 S.Ct. 1715, ... [he] is entitled to an evidentiary hearing for purposes of establishing cause and prejudice if he has proffered specific facts sufficient to support such a finding." Turpin, 87 F.3d at 1211. The District Court in this case did no differently, although it rested its conclusion on a different excuse for procedural default. It found that Cristin had proffered facts that might show a miscarriage of justice, thereby potentially excusing his procedural defaults, and thus returned the case to the Magistrate Judge to conduct an evidentiary hearing on the subject.
 
 
 41
 Thus, it was within the District Court's discretion, described in Townsend, to grant an evidentiary hearing to establish cause and prejudice or a miscarriage of justice to excuse Cristin's procedural defaults. We are unaware of how permitting Cristin the opportunity to develop facts on this issue of federal law would in any way impugn our "respect for state procedural rules" or diminish the importance federal courts must place on "conceptions of comity and of the importance of finality in state criminal litigation." Coleman, 501 U.S. at 747, 111 S.Ct. 2546. Cristin cannot be faulted in this federal forum for not having previously presented the facts underlying arguments that would have been, on the whole, irrelevant or premature before state courts.
 
 
 42
 Cristin presents an additional argument in support of the propriety of the evidentiary hearing. He contends that the word "claim," contained within the same introductory phrase as "failed to develop," limits the applicability of § 2254(e)(2) to the substantive allegations of constitutional error in the state courts, and not the "threshold question of excuse for procedural default." Appellee's Br. at 54. This is a reasonable argument, though the term "claim" is not defined in AEDPA. Lacking any more specific guidance from Congress, "[w]e give the words of a statute their `ordinary, contemporary, common meaning.'" Williams, 529 U.S. at 431, 120 S.Ct. 1479 (citing Walters v. Metro. Ed. Enters., Inc., 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997) (citation omitted)). Black's Law Dictionary defines "claim" as follows: "To demand as one's own or as one's right; to assert; to urge; to insist. A cause of action. Means by or through which a claimant obtains possession or enjoyment of privilege or thing. Demand for money or property as of right, e.g. insurance claim." Black's Law Dictionary 247 (6th ed.1990). Thus, while the definition begins with general terms, its latter half focuses on "claim" as shorthand for a "cause of action" or "means" of obtaining possession or enjoyment of some privilege. In the context of habeas corpus, that privilege would be freedom from incarceration, and a "claim" would be the substantive argument entitling the petitioner to that relief.
 
 
 43
 The Commonwealth is unable to demonstrate anywhere in AEDPA that the term "claim" was intended by Congress to encompass excuses to procedural default. In fact, AEDPA's use of the word "claim" uniformly comports with Cristin's more limited definition of a "cause of action" or "means by or through which a claimant obtains ... enjoyment of [a] privilege." Black's Law Dictionary 247. For example, the term "claim" is used in § 2254(d), also added by AEDPA, in the following sentence. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless...." 28 U.S.C. § 2254(d) (emphasis added). By stating that an "application for a writ of habeas corpus" can be granted "with respect to any claim," the sentence clearly implies that Congress used the term "claim" as a substantive request for the writ of habeas corpus. This is the same definition of the term "claim" used in the pleading requirements of Federal Rule of Civil Procedure 8(a), which states that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Indeed, the use of the term "claim" in Rule 8 was a substitute for the term "cause of action," and was defined by one court as "the aggregate of operative facts which give rise to a right enforceable in the courts." Original Ballet Russe v. Ballet Theatre, 133 F.2d 187, 189 (2d Cir.1943) ("For the traditional and hydraheaded phrase `cause of action' the Federal Rules of Civil Procedure have substituted the word `claim.'").[15]
 
 
 44
 In conclusion, the Commonwealth has presented no indicia that Congress intended § 2254(e)(2)'s restrictions on evidentiary hearings to apply, in addition to hearings on the merits, to hearings on excuses to procedural default. Because the procedural default doctrine and the exceptions to its strictures are federal doctrines and have little bearing on state court processes, we cannot conceive of any state court process that would require a petitioner to develop in state court the facts excusing procedural default for purposes of federal habeas relief. It follows that we cannot fault a petitioner for his or her failure to do so. Moreover, the Commonwealth's argument that the term "claim" includes procedural default hearings is unsupported and at odds with the traditional understanding of that term, as used by both Congress and the Supreme Court. Thus, § 2254(e)(2)'s restrictions do not apply to hearings on procedural default, and we find that the District Court acted within its discretion in ordering such a hearing.
 
 IV. EXCUSING CRISTIN'S FAILURE TO APPEAL
 
 45
 Having concluded that the District Court did not err by granting Cristin an evidentiary hearing to establish an excuse for his procedural defaults, we inquire whether the Court properly concluded that Cristin had cause and prejudice to excuse his two procedural defaults. We will also address whether Cristin can establish a miscarriage of justice as an alternative basis for the Court's excuse of his default. Because we conclude that Cristin cannot establish either cause and prejudice or a miscarriage of justice to excuse his failure to appeal the adverse result of his PCRA proceedings, we will reverse the grant of habeas corpus without reaching the more troubling question of Cristin's failure to take a direct appeal from his in absentia conviction.
 
 A. Cause and Prejudice
 
 46
 In finding cause and prejudice to excuse Cristin's two failures to take appeals, the District Court accepted the factual findings and legal conclusions of the Magistrate Judge. Despite the Court's earlier suggestion that there might be a miscarriage of justice, the Magistrate Judge instead focused her efforts on whether Cristin could establish cause and prejudice. More particularly, the Magistrate Judge's factual findings addressed Cristin's failure to take a direct appeal and the curious history of Cristin's representation and the adequacy of that counsel. The Magistrate Judge commented only sparsely on Cristin's justification for not appealing the rejection of his PCRA petition. In fact, the Magistrate Judge made only two findings of fact with respect to that petition. She found that Cristin was represented by Norman Perlberger in the PCRA proceeding and that a scheduled "evidentiary hearing never took place, apparently because `counsel decided to rest on the record after submitting additional briefs.'" App. at 26 (citing Commonwealth v. Cristin, No. 0191 (Pa. Ct. Comm. Pleas June 12, 1997) (Brinkley, J.)). Furthermore, "[d]uring the same time, Norman Perlberger was corresponding with petitioner in an effort to be paid fees which he believed petitioner owed to him." Id. Other than these limited findings, there was no other evidence to explain Cristin's failure to appeal the resolution of his PCRA proceedings. Nevertheless, the Magistrate Judge concluded that Cristin "did not knowingly and voluntarily waive his right to appeal ... the decision ... on his PCRA petition," App. at 31, and this excused his procedural default. The District Court accepted this conclusion without comment.
 
 
 47
 The Magistrate Judge erred in concluding that Cristin's procedural default should be excused, and the District Court erred in accepting that conclusion. Even if Cristin's failure to appeal the PCRA ruling was unknowing, that fact is irrelevant to establishing cause. The Supreme Court has held that "cause" will "ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. Id. Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Id. at 486, 106 S.Ct. 2639. Indeed, in Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Court addressed the very question presented by this case — the effect of a litigant's inadvertent failure to take a timely appeal in a state collateral proceeding. The Court, applying Murray v. Carrier, concluded that an "ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice. Coleman, 501 U.S. at 752, 111 S.Ct. 2546. Thus, it is immaterial whether Cristin unwittingly failed to appeal the denial of his PCRA petition.
 
 
 48
 Nor is it relevant that Cristin's PCRA counsel "was corresponding with petitioner in an effort to be paid fees." Even were we to attribute Cristin's failure to appeal to his attorney,[16] Cristin nonetheless cannot rely on his attorney's fault to establish cause. While ineffective assistance of counsel can be cause for a procedural default, the attorney's ineffectiveness must rise to the level of a Sixth Amendment violation. See Murray, 477 U.S. at 488, 106 S.Ct. 2639. Because Cristin had no Sixth Amendment right to representation at his PCRA hearing, Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), his counsel's alleged ineffective assistance cannot establish cause for Cristin's procedural default. Coleman, 501 U.S. at 752, 111 S.Ct. 2546.
 
 B. Miscarriage of Justice
 
 49
 While the District Court only suggested the presence of a miscarriage of justice, Cristin has argued before this Court that, as an alternative to cause and prejudice, we can find a miscarriage of justice that would excuse his failure to appeal the PCRA court's rejection of his claims. To establish a miscarriage of justice excusing a procedural default, a habeas petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The miscarriage of justice inquiry is thus concerned with "actual innocence." Sawyer v. Whitley, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).
 
 
 50
 Cristin has not proffered new evidence that would absolve him of guilt for the crime of which he was convicted. We have held that, in certain circumstances, the lack of new evidence is not necessarily fatal to an argument that a petitioner is actually innocent. United States v. Garth, 188 F.3d 99, 110 n. 13 (3d Cir.1999). In Garth, however, we were persuaded that the Supreme Court had reinterpreted the statute under which the petitioner was convicted to require more conduct than was allegedly committed. As such, there was a colorable argument that he was actually innocent of the crime. In those circumstances, it was not a question of what new evidence of innocence the petitioner could present, but whether the evidence currently in the record was sufficient to convict. Thus, Cristin's reliance on Garth to establish that he need not introduce new evidence of his innocence is unpersuasive.
 
 
 51
 Lacking new evidence of his innocence, Cristin argues that he need not demonstrate his actual innocence of the crime to establish a miscarriage of justice. Instead, he submits that he is "actually innocent" of the excessively long sentence that he received — fifteen to thirty years imprisonment. The awkward notion that one can be actually innocent of a sentence, although guilty of the underlying crime, has arisen most often in capital cases. See, e.g., Sawyer, 505 U.S. at 339, 112 S.Ct. 2514. The basic idea is that even a person guilty of an underlying crime can be "actually innocent" of a sentence because the facts presented at sentencing were erroneous and thus do not support the particular sentence imposed. Our precedent on this issue, however, does not support the manner in which Cristin has divorced actual innocence of the crime from actual innocence of the sentence. The latter has no application to this case.
 
 
 52
 The only support presented by Cristin in support of finding a miscarriage of justice in his sentence is Sawyer, 505 U.S. at 347, 112 S.Ct. 2514, in which the Supreme Court applied the "actual innocence" analysis to a capital sentencing. In capital cases, which traditionally bifurcate the hearing of evidence on guilt from evidence of the aggravating or mitigating circumstances that might warrant imposition of the death penalty, the Supreme Court held that a showing of actual innocence of a requirement for a capital sentence would excuse procedural default. Id. The Court emphasized the unique nature of the death penalty, restricting its holding on actual innocence to "those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error."[17] Id.
 
 
 53
 The courts of appeals have split on the question of whether the miscarriage of justice rationale can extend to non-capital sentencings. Compare United States v. Maybeck, 23 F.3d 888, 892-94 (4th Cir.1994) (applying the actual innocence analysis to factual elements of a career offender determination); Mills v. Jordan, 979 F.2d 1273, 1278-79 (7th Cir.1992) (applying actual innocence to the elements of a habitual offender sentencing procedure), with Embrey v. Hershberger, 131 F.3d 739, 740-41 (8th Cir.1999) (en banc) (limiting the "actual innocence of the sentence" rationale to capital cases); United States v. Richards, 5 F.3d 1369, 1371 (10th Cir.1993) (same). Indeed, the issue is not as simple as whether to apply Sawyer in a non-capital context; the courts of appeals have debated the types of sentences of which a petitioner can be innocent and whether a claim of innocence of the sentence is actually a disguised attack on the conviction's validity. For example, in the Fourth Circuit, a holding extending Sawyer to non-capital elements of a career offender determination, Maybeck, 23 F.3d at 892-94, was limited by a later panel to "the context of eligibility for application of a career offender or other habitual offender guideline provision" and was held not to extend to non-factual challenges to the application of sentencing enhancements. United States v. Mikalajunas, 186 F.3d 490, 495 (4th Cir.1999). Similarly, in the Eighth Circuit, an early case applying Sawyer to non-capital sentencings, Pilchak v. Camper, 935 F.2d 145, 148 (8th Cir.1991), was effectively overruled by that Court, en banc, because "Sawyer, in terms, applies only to the sentencing phase of death cases" and the "quarrel [in that case was] not really with his sentence, it [was] with the fact that he was convicted." Embrey, 131 F.3d at 740.
 
 
 54
 We need not venture into the thicket of whether Sawyer's rationale applies with equal validity to non-capital sentencing, because the "actual innocence" rationale remains firmly rooted in the testing of allegedly erroneous factual determinations, whether it be factual determinations of guilt at the conviction stage or factual determinations underlying eligibility for the death penalty. See Sawyer, 505 U.S. at 339, 112 S.Ct. 2514; Bousley, 523 U.S. at 623, 118 S.Ct. 1604. Those courts that have extended Sawyer's holding on the "actual innocence" of a sentence have uniformly done so in the context of testing the factual findings on which a particular non-capital sentence is based, such as prior convictions. See Mikalajunas, 186 F.3d at 495 (limiting a petitioner's argument of actual innocence of a sentence to "eligibility for application of career offender guideline provision"); Mills, 979 F.2d at 1278-79 ("In both [Sawyer and Mills] the sentencing decision resembled a factual determination of guilt or innocence.").
 
 
 55
 Cristin's argument that he is actually innocent of his sentence is thus not applicable to this case. We have no basis for concluding that some factual finding at sentencing was erroneous.[18] Cristin asserts that he is actually innocent of the sentence, but his real argument, which we have already rejected, is that he is actually innocent of the crime. Cristin therefore cannot establish a miscarriage of justice to excuse his failure to appeal the rejection of his PCRA claims.
 
 V. CONCLUSION
 
 56
 Given our skeptical view of Cristin's trial, it is with reluctance that we find that he is not entitled to relief in habeas corpus because he has procedurally defaulted his claims in state court. The District Court did not err in granting Cristin an evidentiary hearing to develop factual bases establishing cause for his procedural defaults, and indeed we applaud the conscientiousness employed by the Court in this respect. Nonetheless, it is plain that Cristin cannot establish the necessary cause for his failure to take a direct appeal from his conviction to the Superior Court or his failure to appeal the rejection of his PCRA petition. Nor can Cristin establish that a miscarriage of justice would result from our failure to consider his claim.
 
 
 57
 * * * * * *
 
 
 58
 For the foregoing reasons, we reverse the District Court's grant of the writ of habeas corpus.
 
 
 
 Notes:
 
 
 [1]
 The Court expresses its gratitude to Cristin's counsel, Elizabeth Ainslie, for her highly professional and competent manner of handling this appeal
 
 
 [2]
 It appears that the Appellee's true name is Daniel Stanton, but that he has proceeded under the name Martin Cristin, his wife's surname, in this action and he is imprisoned under that name
 
 
 [3]
 There is evidence suggesting that Cristin received notice of the adverse disposition of his PCRA petition as early as May 1997
 
 
 [4]
 That letter stated: "You have previously told me that you do not wish me to continue handling your case and I assume that you will get other counsel or handle the appeal yourself if you choose to appeal this. Remember you have until July 12, 1997 to file an appeal."
 
 
 [5]
 The Supreme Court has explained the two excuses for procedural default as follows: "In all cases in which a state prisoner has defaulted his federal claims in state court[,] ... federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).
 
 
 [6]
 The District Court concluded,inter alia, with the following statement reflecting its well-taken concern with the prosecution's tactics in this case: "I find it disturbing indeed that the attorneys for the Commonwealth would even attempt to justify what occurred in this case." Dist. Ct. Op. at 9-10 (April 11, 2000).
 
 
 [7]
 It is uncontested that no state proceeding remains available to Cristin in which he could make the current claims because a second and subsequent PCRA petition would be untimely and its claims would be barred as previously waivedSee 42 Pa. Cons.Stat. Ann. §§ 9545(b)(1), 9543(a)(3); see also Lines v. Larkins, 208 F.3d 153, 163-66 (3d Cir.2000) (discussing the procedural constraints on second and subsequent PCRA petitions).
 
 
 [8]
 As a third avenue for avoiding the effect of his procedural defaults, Cristin could argue that the Commonwealth waived the procedural defaultSee Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); Hull v. Kyler, 190 F.3d 88, 103 (3d Cir.1999). Cristin has not presented a waiver argument in this appeal and could not, for the courts of the Commonwealth have given no indication that they might further consider the merits of his claims despite his earlier failures to appeal.
 
 
 [9]
 UnderTownsend, an evidentiary hearing was mandatory
 [i]f (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the factfinding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.
 Townsend, 372 U.S. at 313, 83 S.Ct. 745.
 
 
 [10]
 See Keeney, 504 U.S. at 5, 112 S.Ct. 1715 (overruling Townsend only "in this respect"), at 18, 112 S.Ct. 1715 ("[t]his holding, of course, directly overrules a portion of Townsend....") (O'Connor, J., dissenting); Cardwell v. Greene, 152 F.3d 331, 336 (4th Cir.1998).
 
 
 [11]
 Such a rare case could exist when a petitioner relies solely on ineffective assistance of counsel to establish both cause and prejudice and as a claim for substantive habeas relief. In those cases, the Supreme Court has held that ineffective assistance claims must be presented to the state courts to satisfy the exhaustion requirementSee Murray v. Carrier, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).
 
 
 [12]
 While we recognize that Cristin had the opportunity to explain his failure to take an appeal at a PCRA hearing, that is only half the procedural default at issue in this case. The District Court afforded Cristin the only opportunity to establish that his failure to take an appeal from the PCRA ruling was itself excused under either the cause and prejudice or miscarriage of justice rationales
 
 
 [13]
 We recognize that sometimes a petitioner will develop facts in state court that later prove relevant to excusing a procedural default during federal proceedings. These occurrences, however, are coincidental, for it is rare that a state court intentionally provides a forum in which the petitioner can develop facts that might one day excuse his procedural default. It would be unreasonable to require a petitioner to rely on such coincidences to receive an evidentiary hearing on his procedural default
 
 
 [14]
 Nor are we aware of a case in which theKeeney standard has been employed to limit the availability of an evidentiary hearing on excuses to procedural default in an action under 28 U.S.C. § 2255. The Supreme Court held in United States v. Frady, 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), that the same "cause and actual prejudice" standard in habeas corpus applied to procedural defaults in § 2255 actions for federal prisoners. See also Reed v. Farley, 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) ("Where the petitioner — whether a state or federal prisoner — failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes `cause' for the waiver and shows `actual prejudice resulting from the alleged ... violation,'" quoting Wainwright v. Sykes, 433 U.S. 72, 84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). Thus, the Keeney standard for the introduction of evidence, when the petitioner failed to develop it during the original trial, applies in § 2255 suits in the same manner in which it applied to § 2254 suits prior to AEDPA.
 Nonetheless, federal appellate courts have granted evidentiary hearings to determine if an excuse to procedural default exists in § 2255 claims without mentioning whether the petitioner must meet the Keeney standards before receiving such a hearing. See Bousley v. United States, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (requiring the District Court to conduct an evidentiary hearing on the question of whether petitioner could show a miscarriage of justice that might excuse his procedural defaults); United States v. Jones, 172 F.3d 381, 384-85 (5th Cir.1999) (per curiam) (same). This is good evidence that the "failed to develop" language in Keeney, and, by implication, the standard in § 2254(e)(2) adopted from it, do not apply to evidentiary hearings on whether a petitioner can establish an excuse for an earlier procedural default.
 
 
 [15]
 Moreover, there is good evidence from the genesis of § 2254(e)(2) that Congress intended the term "claim" to encompass only substantive requests for habeas corpus, which is precisely how that term was previously used by the Supreme Court inKeeney. When Congress acts to codify Supreme Court precedent, as it did in enacting § 2254(e)(2), Williams, 529 U.S. at 434, 120 S.Ct. 1479, courts can presume that it uses terms in the same fashion as the Court. Thus, in Williams the Court held that Congress in § 2254(e)(2) used the word "failed" in the same sense in which it used that term in Keeney. Id.
 Similarly, we can assume that Congress used the term "claim" in § 2254(e)(2) in the same manner that the Court used the term in Keeney. Examining Keeney, it is evident that the Court used the term only as Cristin suggests — an entitlement to relief on the merits — and not as a more general term including the showing of cause and prejudice or miscarriage of justice. See, e.g., Keeney, 504 U.S. at 4, 112 S.Ct. 1715 ("the critical facts relevant to his federal claim"), at 4 n. 1, 112 S.Ct. 1715 ("respondent's claim that the plea form and plea proceeding were not adequately translated"), at 8, 112 S.Ct. 1715 ("failing to properly assert a federal claim in state court and failing in state court to properly develop such a claim"), at 9, 112 S.Ct. 1715 ("full factual development of a claim"), at 10, 112 S.Ct. 1715 ("Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claim on the merits."). In that entire decision, applying the cause and prejudice and miscarriage of justice standards to the failure to develop a factual record for habeas relief, the Court never once uses the term "claim" to refer to a showing of cause and prejudice or miscarriage of justice.
 
 
 [16]
 Given the clarity of Perlberger's correspondence withCristin, supra at n. 3, we think it unlikely that Cristin's PCRA counsel could be held responsible for his failure to appeal.
 
 
 [17]
 This Court has noted that the "Supreme Court has not decided whether the actual innocence test is applicable in a noncapital case when there is evidence that defendant committed the crime but argues that he or she was responsible for a lesser degree of guilt."Glass v. Vaughn, 65 F.3d 13, 16 (3d Cir.1995). While our consideration in Glass centered on whether the petitioner was actually innocent of first degree murder and guilty of third degree, an arguable analogy to being innocent of the sentence, we did not reach the issue. Id. Instead, we assumed arguendo that actual innocence could extend to the degree of guilt and went on to find petitioner's evidence in that respect lacking. Id. at 17.
 
 
 [18]
 Indeed, the error in Cristin's position is revealed if it proceeds to its logical end. If we were to adopt Cristin's argument thatSawyer should apply to errors in non-capital sentencings and assume that he has set forth sufficient facts to establish his actual innocence of that sentence, at most Cristin would be entitled to address arguments waived at his sentencing. Because Cristin's claims of error in this habeas proceeding are directed at the conduct of the in absentia trial, he would be unable to seek relief for those claims.