**Jamie KIRNON, Petitioner,**

v.

**Michael KLOPOTOSKI, et al., Respondents.**

**Civil Action No. 07–4474.**

United States District Court, E.D. Pennsylvania.

Dec. 17, 2008.

---

Jamie Kirnon, Dallas, PA, pro se.

**Memorandum and Order**

YOHN, District Judge.

Presently before the court is petitioner Jamie Kirnon's pro se motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Kirnon is currently serving a life sentence for the first degree murder of Darius Cuthbert, as well as consecutive sentences for related charges. After conducting a de novo review of the Report and Recommendation of United States Magistrate Judge Elizabeth T. Hey, and upon consideration of petitioner's objections thereto, the court will overrule petitioner's objections, adopt in substantial part the Report and approve the Recommendation.

## I. Factual and Procedural Background

The Pennsylvania Superior Court, in reviewing Kirnon's direct appeal, set forth the facts that are material to Kirnon's instant habeas petition:

Testimony at trial revealed that on November 18, 1998, appellant and anoth-

er man engaged Darius Cuthbert and his friend Omar Johnson in a combative conversation at the intersection of Colorado Street and Susquehanna Avenue in Philadelphia. Trial Court Opinion, 1/29/04, at 1 [2004 WL 5402654]. An argument involving the sale of drugs ensued between the two groups of men. *Id.* at 2. Mr. Johnson testified that appellant and the other man each pulled out a nine-millimeter handgun, the other man fired the first shot, and appellant then began firing his weapon. *Id.*

Danny Gissentanner, a friend of both Mr. Cuthbert and Mr. Johnson who was nearby at the time, testified that after the shooting he immediately determined that Mr. Cuthbert was dead, proceeded to remove a handgun belonging to Mr. Johnson from the scene and place it in the trunk of his Nissan Maxima, and then attempted to take Mr. Johnson to the hospital. *Id.* The police arrived and assisted in taking Mr. Cuthbert and Mr. Johnson to Temple [University] Hospital, where Mr. Johnson was treated for eight gunshot wounds and Mr. Cuthbert was pronounced dead as a result of his five gunshot wounds. *Id.* at 2–3.

Police officers recovered Mr. Johnson's handgun from the Nissan Maxima, and ballistics showed that no casings had been ejected from the weapon. *Id.* at 2. Crime scene technicians arrived, photographed the scene, collected evidence, and determined that all of the fired casings were from nine-millimeter firearms. *Id.* at 3.

Thereafter, Mr. Gissentanner identified appellant as one of the shooters, an arrest warrant was issued, and appellant was eventually arrested. *Id.* *Commonwealth v. Kirnon*, 604 EDA 2004, at 1–3, 872 A.2d 1272 (Pa. Super. Ct. Jan. 13, 2005).

On November 4, 2003, the jury found Kirnon guilty of first degree murder, aggravated assault, criminal conspiracy, carrying a firearm on a public street, and possession of an instrument of crime. (Trial Tr. vol. 7, 3–4, Nov. 4, 2003.) After a penalty phase, the jury sentenced Kirnon to life imprisonment on the murder charge. (Trial Tr. vol. 8, 83, Nov. 5, 2003.) The Honorable Gary Glazer, who presided over the trial, also imposed consecutive sentences of 72–144 months for aggravated assault and 42–84 months for criminal conspiracy. (Sentencing Tr., 4–5, December 22, 2003.) Judge Glazer entered a sentence of guilty without further penalty on the remaining firearms offenses. (*Id.*)

Kirnon filed an appeal in the Pennsylvania Superior Court, challenging both the sufficiency and weight of the evidence admitted at trial.[1] Kirnon's argument primarily rested on inconsistent statements made by key witnesses. The Superior Court found that "[t]he evidence, as produced at trial, clearly established that [Kirnon] was not only present at the scene of the murder, but that he, along with his associate, actively participated in the shooting of a rival drug dealer after an argument concerning their illegal activi-

---

1. On direct appeal, Kirnon framed the issues as:

 [1] Was the evidence sufficient to support the verdicts of guilty given that the three critical witnesses were so inconsistent and contradictory, both internally and when contrasted with each other, as to render any verdict based thereon the product of speculation, guesswork and conjecture?

 [2] Was the verdict against the weight of the evidence when the evidence presented was so internally inconsistent and contradictory among and between the witnesses that it vitiated any credibility, thus rendering the verdicts so offensive to a reasonable sense of justice that justice must be given another opportunity to prevail?

 *Commonwealth v. Kirnon*, 604 EDA 2004, at 3, 872 A.2d 1272 (Pa. Super Ct. Jan. 13, 2005) (citing Kirnon's direct appeal brief).

ties." *Commonwealth v. Kirnon,* No. 0604 EDA 2004, slip op. at 5, 872 A.2d 1272 (Pa.Super.Ct. Jan. 13, 2005). Accordingly, the Superior Court affirmed the judgment of sentence. *Id.* at 7. Kirnon did not seek discretionary review to the Pennsylvania Supreme Court.

Pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541–46, Kirnon filed a pro se PCRA petition on January 13, 2006 arguing that: (1) the evidence offered at trial was insufficient to sustain a conviction on the firearms charge and insufficient to establish the requisite mens rea for the murder charge; (2) the prosecutor unconstitutionally injected race into the trial by referring to Kirnon as a "black drug dealer" and a "murderer" in closing argument; (3) the prosecutor knowingly presented perjured testimony; (4) his trial counsel was ineffective for failing to strike a juror during voir dire, failing to properly impeach the chief state witness, and failing to properly cross-examine state witnesses; (5) the trial court erred when instructing the jury on "flight to avoid prosecution" and the elements of murder, and the court erred in failing to instruct the jury on self-defense; and (6) the state violated the Vienna Convention. (Petr.'s PCRA Br. at 1–35.)

After reviewing the case file and meeting with Kirnon, Kirnon's appointed PCRA counsel filed a no-merit letter pursuant to *Commonwealth v. Finley,* 379 Pa.Super. 390, 550 A.2d 213 (1988).[2] On October 5, 2006, the PCRA court dismissed Kirnon's petition. *Commonwealth v. Kirnon,* May Term 2001, No. 0374, slip op. at 11, 2006 WL 5429262 (Phil.Ct. C. Pl. Oct. 5, 2006) (Glazer, J.). Kirnon appealed the dismissal on October 19, 2006, raising twenty-two grounds for relief.[3] In its July 24, 2007

---

**2.** Under *Finley,* a PCRA court can grant leave for appointed counsel to withdraw from the case upon the review of counsel's "no-merit" letter. A no-merit letter must list each of the issues counsel reviewed and explain the reasoning that led counsel to find that the petitioner's claims were meritless. *Id.* at 215. The *Finley* court explained that the PCRA court then must engage in an "independent review" of the record in deciding whether petitioner's claims are meritless. *Id.*

**3.** Kirnon asserted the following twenty-two grounds:

1: The court erred by dismissing PCRA petition without conducting its own independent review of the certified record.
2: The court erred by dismissing PCRA petition without ruling on petitioner's motion for change of appointed counsel.
3: The court erred by dismissing PCRA petition without first ruling on petitioner's objections pursuant to; [sic] PA.R.Crim. Pro. 907 of the court's notice to dismiss.
4: PCRA counsel was ineffective for failing to do an independent review of the record.
5: PCRA counsel was ineffective for not listing each issue on petitioner's PCRA petition.

6: PCRA counsel was ineffective for not making any kind of arrangement or attempt at interviewing petitioner in order to discuss the issues petitioner raised.
7: The evidence was insufficient to sustain a conviction on the firearms violation and Trial counsel as well as Appellate counsel failed to challenge the inconsistent statements of Commonwealth witness Daniel Gissentanner.
8: Trial counsel was ineffective for failing to object and move for a mistrial when in summation, the Commonwealth referred to petitioner as a; [sic] "[B]lack drug dealer and Murderer."
9: Trial counsel was ineffective for not striking Denene Brown from serving on petitioner's jury and appellate counsel was ineffective for failing to raise this issue on post-trial and on direct appeal.
10: The state created as impediment to petitioner's Sixth Amendment right to counsel by repeatedly violating the Vienna Convention and implementing Legislation at 28 CFR 50.5.
11: Petitioner's trial counsel was ineffective for failing to impeach the Commonwealth's chief witness on cross-examination during trial on; [sic] October 30, 2003.

opinion, the Superior Court addressed fourteen of Kirnon's claims. The court held that Kirnon failed to conform the majority of his appeal to Pennsylvania Rules of Appellate Procedure 2116 (Statement of Questions Involved) and 2119 (Argument). As a result, the court found eleven of Kirnon's claims to be procedurally defective and declined to reach the merits accordingly. The court did reach the merits of three claims relating to the ineffectiveness of Kirnon's PCRA counsel. Upon review, the court found "no arguable merit" in Kirnon's allegations and upheld the dismissal of Kirnon's PCRA petition. *Commonwealth v. Kirnon*, No. 3235 EDA 2006, slip op. at 12, 935 A.2d 15 (Pa.Super.Ct. Jul. 24, 2007). Kirnon's petition for reargument was denied on September 28, 2007, and he did not seek discretionary review with the Pennsylvania Supreme Court.

12: Petitioner was denied Due Process and Equal Protection of the law under the Sixth and Fourteenth Amendment of the United States Constitution and these same rights was [sic] denied under the Pennsylvania Constitution.

13: The Prosecution violated Petitioner's right by knowingly using perjured testimony and [petitioner] was denied Due Process of Law under the Fourteenth Amendment.

14. The Trial Court erred in charging the jury on the elements of "Flight to Avoid Prosecution," when Petitioner was not charged with such offense, and Trial Counsel rendered ineffective assistance of counsel in not objecting to this charge.

15: The Trial Court committed error in charging the jury on the elements of the murder, "Killing is with malice if killer acts with 'intent'." Trial Counsel rendered ineffective assistance of counsel in not objecting to this charge.

16: The Trial Court committed error in not giving a reasonable doubt defense instruction, and Trial Counsel rendered ineffective assistance of counsel in not requesting a self-defense instruction.

17: The Trial Court erred in instructing the jury on the elements of conspiracy where

On October 25, 2007, Kirnon filed this petition for habeas corpus raising nine grounds for relief:

I. The state created an impediment to petitioner's Sixth Amendment right to counsel through consular representation by violating the Vienna Convention;

II. The trial court erred in charging the jury on the elements of flight to avoid prosecution when petitioner was not charged with that offense, and trial counsel rendered ineffective assistance of counsel by not objecting to such a charge;

III. Trial counsel rendered ineffective assistance of counsel for failing to impeach the chief Commonwealth witness, Omar Johnson, with prior inconsistent statements;

IV. Trial counsel rendered ineffective assistance of counsel for failing to ob-

the Trial Court stated that conspiracy was "Like shooting someone." Trial Counsel rendered ineffective assistance of counsel for not objecting to this instruction.

18: Trial Counsel rendered ineffective assistance of counsel in failing to properly cross-examine Detective Rossiter.

19: Trial Counsel rendered ineffective assistance of counsel in failing to properly cross-examine Detective Jaconier.

20: Trial Counsel was ineffective for failing to utilize Marion Wilson, whose statement to Police consisted of language showing self-defense, where this witness gave statement that, "[a]ll had their guns out."

21: The prosecutor committed misconduct in speaking about petitioner when remarks were made to the jury that, "[i]t is his time they've paid. Now its his time." Trial counsel was ineffective for failing to object to those remarks.

22: The Prosecutor committed further misconduct in introducing the perjured testimony of; [sic] Omar Johnson, N.T. pgs. 41–44 & 48–49. This perjury is evident by the testimony of Officer McKeerer.

(Pet. Br.App. PCRA Judg. at 2–2D.)

ject and move for a mistrial when in summation, the prosecution referred to petitioner as a black drug dealer and murderer;

V. Prosecutorial misconduct stemming from the prosecutor's racially-based comment made during closing argument;

VI. The prosecution violated petitioner's Sixth and Fourteenth Amendment rights by knowingly eliciting and using the perjured testimony of Daniel Gissentanner;

VII. Trial and appellate counsel rendered ineffective assistance of counsel for failing to challenge the inconsistent statements made by Commonwealth witness Daniel Gissentanner;

VIII. The evidence was insufficient to sustain a conviction for a firearms violation where the evidence of such was based on perjured testimony and inconsistent statements of Commonwealth witness Daniel Gissentanner; and

IX. Petitioner was denied due process and equal protection under the Sixth and Fourteenth Amendments because the Commonwealth failed to prove first degree murder and related offenses beyond a reasonable doubt.

The District Attorney filed its response on January 18, 2008, arguing the petition was untimely and its claims were procedurally defaulted. Kirnon filed his response and supporting memorandum on March 11, 2008. On March 12, 2008, the District Attorney filed a sur-reply acknowledging the petition's timeliness, but still advancing its default argument.

## II. Standard of Review

Where a habeas petition has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), the court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b) (1). After completing such review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Magistrate Judge Elizabeth T. Hey found that Kirnon's habeas petition should be dismissed because: (1) six of Kirnon's nine habeas petition claims are subject to procedural default, (2) no constitutional violation stems from the prosecutor's closing statement, and (3) Kirnon's convictions are supported by sufficient evidence.

In response, Kirnon has filed objections to the Report and Recommendation with respect to all three of the magistrate judge's findings. First, Kirnon argues that the denial of an evidentiary hearing by the PCRA court restricted his ability to establish certain facts on the record. Because these facts were absent from the record, Kirnon believed that he could not raise the issues in his PCRA appeal. Kirnon asserts that this circumstance constitutes cause for his procedural default. Second, Kirnon argues that the convictions are not supported by sufficient evidence. This argument is based primarily on inconsistent testimony offered by key witnesses at trial. Finally, Kirnon argues that the prosecutor unconstitutionally injected race into the trial during the prosecutor's summation, thereby denying Kirnon due process.

The court addresses these issues de novo.

## III. Discussion

### A. Exhaustion

██ A habeas petitioner must exhaust available state court remedies prior to obtaining any habeas relief. 28 U.S.C. § 2254(b)(1)(A). Kirnon raised claims I–IV, VI and VII in his PCRA appeal[4] and

4. Claims I–V, VI and VII in this habeas petition correspond to claims 10, 14, 11, 8, 13,

claims VIII and IX in his direct appeal. Although Kirnon did not file for discretionary review with the Pennsylvania Supreme Court, as of May 9, 2000, the Pennsylvania Supreme Court does not require petitioners to file for discretionary relief to satisfy exhaustion requirements. *See Lambert v. Blackwell*, 387 F.3d 210, 232–33 (3d Cir. 2004). As a result, claims I–IV and VI–IX are exhausted.

■ In claim V, Kirnon alleges prosecutorial misconduct stemming from the prosecutor's use of the phrase: "black drug dealer and murderer." Kirnon may have raised this claim in his original PCRA petition, but did not raise it in his direct appeal or his PCRA appeal. In claim number twenty-one of his PCRA appeal, Kirnon raised another prosecutorial misconduct claim centering on the prosecutor's use of a different phrase: "[i]t is his time they've paid. Now its his time." As mentioned, to properly exhaust his state remedies, Kirnon must present his claims to the Pennsylvania Superior Court. *See Williams v. Folino*, 2008 WL 336306, *3 (E.D.Pa. Feb. 4, 2008) (reiterating that "a habeas petitioner successfully exhausts a claim by bringing it to the Superior Court either on direct appeal or during PCRA proceedings"). Because Kirnon did not raise his prosecutorial misconduct claim concerning the phrase "black drug dealer and murderer" in either his direct appeal or his PCRA appeal, Kirnon has failed to exhaust his state remedies for claim V. *Cf. Moore v. Morton*, 255 F.3d 95, 103 n. 7 (3d Cir.2001) (declining to review some of petitioner's prosecutorial misconduct claims where factual predicates for the claims (i.e., the prosecutor's particular actions/statements) were not raised in each New Jersey state court); *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir.1999) ("To 'fairly present' a claim, a petitioner must present a federal claim's

factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.").

Moreover, because the time to exhaust this claim has passed, 42 Pa. Cons.Stat. § 9545(b), claim V is procedurally defaulted. *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. 2546 (reasoning that when "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred ... there is a procedural default for purposes of federal habeas"). Petitioner, as described in the next section, has not established cause and prejudice or a fundamental miscarriage of justice to overcome his procedural default. Thus, petitioner cannot now seek relief for claim V.

**B. Procedural Default: Claims I–VII**

■ "[I]f the final state court presented with [the] federal claim refuses to decide its merits based on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence." *Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir.1996) (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *see also Wainwright v. Sykes*, 433 U.S. 72, 86, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (articulating "cause and prejudice" standard). A state procedural ground is "independent" if it does not rest primarily on and does not appear to be interwoven with federal law. *Coleman*, 501 U.S. at 734–35, 111 S.Ct. 2546 (citing *Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)); *see also Campbell v. Burris*, 515 F.3d 172, 177 (3d Cir.2008) (focusing inquiry on whether "state law

and 7 respectively in Kirnon's appeal from the denial of his PCRA petition.

alone provides everything necessary to support the court's judgment"). A rule is an "adequate" ground when it speaks in clear and unmistakable terms and when courts apply its requirements with consistency and regularity. *Campbell,* 515 F.3d at 176 (citing *Doctor v. Walters,* 96 F.3d 675, 683 (3d Cir.1996)). The adequacy and independence of the state procedural ground must be clear from the face of the state court opinion. *Harris v. Reed,* 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (applying *Michigan v. Long*'s "plain statement rule" to district courts reviewing habeas petitions).

On direct appeal, the Pennsylvania Superior Court reached the merits of Kirnon's sufficiency claims (VIII and IX). Thus, these claims are not subject to default. Conversely, Kirnon raised claims I through IV, VI and VII in his PCRA appeal, and the Superior Court disposed of the claims on state procedural grounds. Specifically, the court relied on Pennsylvania Rules of Appellate Procedure 2116(a) and 2119(a). The rules govern appellate brief format and content, and read as follows:

### Rule 2116 Statement of the Questions Involved.[5]

**(a) General rule.** The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or

suggested thereby. Whenever possible each question must be followed immediately by an answer stating simply whether it was affirmed, negatived, qualified or not answered by the court or government unit below. If a qualified answer was given to the question, appellant shall indicate, most briefly, the nature of the qualification, or if the question was not answered and the record shows the reason for such failure, the reason shall be stated briefly in each instance without quoting the court or government unit below.

### Rule 2119 Argument.

**(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

■ The Superior Court, the highest court to address these claims, held that Kirnon failed to comply with Rules 2116(a) and 2119(a), noting that "the defects in [Kirnon's] brief [were] substantial." *Commonwealth v. Kirnon,* No. 3235 EDA 2006, slip op. at 8, 935 A.2d 15 (Pa.Super.Ct. Jul. 24, 2007). The "statement of questions involved" far exceeded the page limit, and "most of the arguments advanced by [Kirnon] include bald assertions of error and references to his version of the facts expressed as legal conclusions." *Id.* The Superior Court was unambiguous in its application of Rules 2116(a) and 2119(a), and at no point in the opinion does it reach the merits of claims I–IV, VI or VII. In addition, the court reasoned that Rules 2116(a) and 2119(a) offer clear guidelines for com-

---

5. This rule has been amended, and the amendment was adopted by the Supreme Court of Pennsylvania on July 11, 2008. At the time of Kirnon's PCRA appeal, the rule as stated above governed.

pliance, and careful review confirms that state and federal courts have applied these rules consistently.[6] As a result, Kirnon's failure to comply with Rules 2116(a) and 2119(a) constitutes procedural default with respect to claims I–IV, VI and VII. When combined with Kirnon's failure to exhaust claim V, Kirnon has procedurally defaulted claims I–VII.

▮▮▮ Kirnon can overcome procedural default with a showing of "cause and prejudice" or by showing a "fundamental miscarriage of justice." *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir.2000) (quoting *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir.2000) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir.1999)); *see also Coleman*, 501 U.S. at 750, 111 S.Ct. 2546 (applying "cause and prejudice" standard to district court review of habeas petitions). To show "cause," a petitioner must establish that "some objective factor external to the defense impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule.") *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). "Prejudice" requires that the "habeas petitioner ... show 'not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494, 106 S.Ct. 2639 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)) (emphasis in original).

▮▮▮ Kirnon's arguments for cause relate to (1) the failure of the PCRA court to hold an evidentiary hearing to develop his ineffective assistance of counsel claims; (2) his PCRA counsel's *Finley* letter, and (3) Kirnon's own reasonable belief as to his compliance with Pennsylvania's appellate procedure. With respect to his PCRA counsel, Kirnon argues that the *Finley* letter deprived him of an opportunity to raise his PCRA arguments and to develop an evidentiary base in the first instance, and forced Kirnon to proceed with his PCRA appeal pro se. Kirnon argues that the combined effect constitutes cause. The allegations are properly construed as an ineffectiveness of counsel argument. The Supreme Court has recognized that ineffectiveness of trial and direct appeal counsel may establish "cause" where counsel is constitutionally ineffective. *Carrier*, 477 U.S. at 488, 106 S.Ct. 2639 (applying the standard from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). However, the ineffectiveness of PCRA counsel is not a constitutional violation, *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), as the Sixth Amendment right to counsel does not extend beyond direct appeal, *id.* (holding that petitioner does not have a constitutional right to counsel "when attacking a conviction that has long since become final upon exhaustion of the appellate process"). Without a constitutional violation, a counsel's ineffectiveness does not constitute "cause"

---

**6.** *See, e.g., Williams v. Folino*, 2008 WL 336306, *5 (E.D.Pa. Feb. 4, 2008) (noting that failure to comply with Rule 2116 constitutes default and that state courts consistently apply rule); *Washington v. Patrick*, 2007 WL 3231705, *1 (E.D.Pa. Oct. 30, 2007) (holding that failure to comply with Rule 2119 constituted adequate and independent state ground for dismissal of habeas claim); *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa.Super.Ct.2006) (noting that compliance with

Rule 2119(a) is "[o]f particular importance" and reminding that "[i]t is not the duty of the Superior Court to act as an appellant's counsel"); *Commonwealth v. Burkett*, 830 A.2d 1034, 1038 (Pa.Super.Ct.2003) (dismissing sufficiency claim as underdeveloped pursuant to Rule 2119(a)); *Thomas v. Elash*, 781 A.2d 170, 176–77 (Pa.Super.Ct.2001) (reasoning that compliance with Rule 2116(a) is mandatory and holding that failure to comply precludes review of the substantive claim).

and cannot overcome procedural default. *Coleman,* 501 U.S. at 755, 111 S.Ct. 2546 (reasoning that "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation"); *see Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir.2002) ("Because [petitioner] had no Sixth Amendment right to representation at his PCRA hearing, his counsel's ineffective assistance cannot establish cause for [petitioner's] procedural default."). Likewise, Kirnon's pro se argument also fails. Kirnon's status as a *pro se* petitioner, standing alone, does not obviate the need to comply with appellate procedures. *See Caswell v. Ryan,* 953 F.2d 853, 862 (3d Cir.1992). Further, Kirnon's remaining assertions are meritless, as his assertions point to no external impediment that prevented his compliance with Rules 2116 and 2119. As a result, Kirnon is unable to show cause for his procedural default.

■■■ If a petitioner is unable to demonstrate cause and prejudice, a district court still can consider the defaulted claims if the failure to do so would result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 748, 111 S.Ct. 2546. The miscarriage of justice exception is "explicitly tied ... to the petitioner's innocence." *Schlup v. Delo,* 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Thus, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Id.* at 327, 115 S.Ct. 851; *see also House v. Bell,* 547 U.S. 518, 536–37, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (discussing application of *Schlup* standard to "actual innocence" inquiry). Innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (citing *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). Kirnon's petition does not present any evidence or argument of factual inno-

cence. Therefore, the actual innocence gateway is inapplicable.

Because Kirnon cannot establish cause and prejudice or actual innocence, claims I–VII remain subject to procedural default.

## C. Sufficiency of the Evidence: Claims VIII and IX

■■■ In his petition, Kirnon argues that his convictions are not supported by sufficient evidence. The argument centers on the inconsistent testimony of two eyewitnesses and a former girlfriend. As mentioned above, Kirnon raised these issues on direct appeal, and the Superior Court reached the merits in affirming the conviction; therefore, the court may properly review the claims now.

"[T]o convict a defendant the government must prove each element of a charged offense beyond a reasonable doubt." *United States v. Ozcelik,* 527 F.3d 88, 93 (3d Cir.2008) (citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), district courts cannot grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

### 1. Section 2254(d)(1)

■■■ I turn my focus first to § 2254(d)(1), to consider whether the Superior Court determination was "contrary to" or an "unreasonable application of" clearly established federal law. A state court decision is "contrary to" Supreme

Court precedent if the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law or if the state court decides the case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Terry Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (interpreting § 2254(d)(1)); *see Marshall v. Hendricks*, 307 F.3d 36, 51 (3d Cir.2002). An "unreasonable application" of federal law occurs when "the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the petitioner's case." *Terry Williams*, 529 U.S. at 413, 120 S.Ct. 1495.

The Supreme Court established the federal law relevant to petitioner's claims VIII and IX in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under *Jackson*, a court reviewing a sufficiency challenge must determine " 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Sullivan v. Cuyler*, 723 F.2d 1077, 1083–84 (3d Cir.1983) (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781) (emphasis in original). The adoption of AEDPA has altered this inquiry by adding an additional level of deference. Under § 2254(d) (1), the court must determine whether the state court's application of the *Jackson* standard was itself an unreasonable application of that federal standard. *See* § 2254(d)(1); *Tucker v. Palmer*, 541 F.3d 652, 666 (6th Cir. 2008); *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir.2005). On direct appeal, the Superior Court concluded that Kirnon's

convictions were supported by sufficient evidence.[7] After review, I conclude that this determination is neither contrary to nor an unreasonable application of the *Jackson* standard.

First, the Superior Court's reasoning is not contrary to a clearly established federal law. At the outset of its decision, the Superior Court set forth the proper standard of review:

> The standard of review we apply in reviewing the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt."

*Commonwealth v. Kirnon*, No. 0604 EDA 2004, slip op. at 3, 872 A.2d 1272 (Pa.Super.Ct. Jan. 13, 2005). After reviewing the evidence, the Superior Court the court reasoned:

> Viewing all evidence in the light most favorable to the Commonwealth, we find that there was sufficient evidence for the jury to conclude that appellant committed the charged crimes.

*Id.* at 5. Importantly, "a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406, 120 S.Ct. 1495. Although the Superior Court did not articulate the Jackson standard specifically, Pennsylvania law is co-extensive with the Jackson inquiry. *See Evans*

---

7. The Superior Court also rejected Kirnon's weight of the evidence claim. The court reasoned that Kirnon had merely repackaged his sufficiency claim as a weight of the evidence argument. *Id.* The court concluded that "[e]ven if there were inconsistencies in the witnesses' testimony, as alleged by appellant, it was nevertheless within the sole province of the jury to weigh and determine the credibility of the evidence presented." *Commonwealth v. Kirnon*, No. 0604 EDA 2004, slip op. at 5, 872 A.2d 1272 (Pa.Super.Ct. Jan. 13, 2005).

*v. Court of Common Pleas, Delaware County,* 959 F.2d 1227, 1232 (3d Cir.1992). The Superior Court weighed the evidence *in favor of the prosecution* and asked whether "the jury" could "conclude that the appellant committed the charged crimes." *Commonwealth v. Kirnon,* No. 0604 EDA 2004, slip op. at 5, 872 A.2d 1272 (Pa.Super.Ct. Jan. 13, 2005). This reasoning is consistent with and a "run-of-the-mill" application of the Jackson standard. *See Williams,* 529 U.S. at 406, 120 S.Ct. 1495. Thus, the Superior Court's determination is not "contrary to" the legal standard the Supreme Court established in *Jackson.*

The remaining question, therefore, is whether the Superior Court unreasonably applied the *Jackson* standard. The Superior Court, after setting forth the elements[8] for each of Kirnon's convictions, found the following:

The evidence, as produced at trial, clearly established that [Kirnon] was not only present at the scene of the murder, but that he, along with his associate, actively participated in the shooting of a rival drug dealer after an argument concerning their illegal activities. Witnesses to the shooting, including a victim of the shooting, testified that appellant fired numerous shots from the nine-millimeter handgun that he had pulled from his waist concurrently with his associate. Therefore, the charges of murder, aggravated assault, criminal conspiracy, carrying a firearm on a public street, and possessing an instrument of crime, were well supported at trial.

*Commonwealth v. Kirnon,* No. 0604 EDA 2004, slip op. at 5–6, 872 A.2d 1272 (Pa.Super.Ct. Jan. 13, 2005). Kirnon's objections focus on inconsistent statements offered by three witnesses.[9] Even if these inconsis-

---

8. Quoting the appropriate statutory language, the Superior Court stated the elements of the crimes as follows:

To support a charge of first-degree murder, the Commonwealth must prove that the defendant committed an intentional killing. 18 Pa.C.S.A. § 2502(d). A criminal homicide constitutes murder of the first degree when "it is committed ... by any [kind] of willful, deliberate, and premeditated [act]." 18 Pa.C.S.A. § 2502(d).

To support a charge of aggravated assault, the Commonwealth must prove that the defendant "attempted to cause serious bodily injury to another, or caused such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1).

To support a charge of criminal conspiracy, the Commonwealth must prove that the defendant, "with the intent of promoting or facilitating the commission of a crime, agrees with another person or persons that they or one or more of them will engage in conduct which constitutes such crime"; no person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired. 18 Pa. C.S.A. § 903(a)(1), (e).

To support a charge of carrying firearms on a public street, the Commonwealth must prove that the defendant carried "a firearm, rifle or shotgun at any time upon the public street ... [without] a license or exemption." 18 Pa. C.S.A. § 6108.

And, to support a charge of possessing an instrument of crime, the Commonwealth must establish that the defendant "possessed anything commonly used for criminal purposes under circumstances not manifestly appropriate for the lawful uses it may have, with the intent to employ it criminally." 18 Pa.C.S.A. § 907(a), (d).

*Commonwealth v. Kirnon,* No. 0604 EDA 2004, slip op. at 4–5, 872 A.2d 1272 (Pa.Super.Ct. Jan. 13, 2005).

9. Johnson's inconsistent statement was given to police when first questioned. Initially, Johnson told police that Kirnon's group began to shoot as they approached. (Trial Tr. vol. 4, 54–55, Oct. 30, 2003.) At trial, Johnson testified that a five to ten minute argument over drug territory transpired prior to the shooting. (*Id.* at 21.)

tencies prompt credibility concerns, "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The jury was presented with the inconsistencies and potential biases, and the determination of credibility was solely within its province. Thus, Kirnon's credibility arguments do not alter the court's conclusion regarding the Superior Court's application of *Jackson.*

Instead, I find that the Superior Court properly enunciated the elements of Pennsylvania law and applied the law to facts of Kirnon's case. Viewing the evidence in the light most favorable to the prosecution, a " 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Sullivan,* 723 F.2d at 1083–84 (3d Cir.1983) (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). Therefore, I hold that the Superior Court was not unreasonable in applying the relevant federal law. Because the Superior Court's review of Kirnon's sufficiency claim was not contrary to or an unreasonable application of the *Jackson* standard, § 2254(d)(1) does not afford Kirnon a ground for habeas relief.

### 2. Section § 2254(d)(2)

■ Finally, I find that Kirnon's conviction was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Under § 2254(d)(2), "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Lambert v. Blackwell,* 387 F.3d 210, 234 (3d Cir.2004) (quoting *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)). " 'Yet, deference does not imply abandonment or abdication of judicial review.... In other words, deference does not by definition preclude relief.' " *Id.* at 234–35 (quoting *Miller–El,* 537 U.S. at 340, 123 S.Ct. 1029) (citations and alterations omitted).

As quoted above, the Superior Court found that the evidence "clearly established" Kirnon's guilt. My review of the record supports the Superior Court's conclusion: At trial, Johnson testified that Kirnon, Raphael Stewart and an unidentified man approached Cuthbert as Cuthbert and Johnson were talking. (Trial Tr. vol. 4, 20, Oct. 30, 2003.) Johnson's testimony revealed that Kirnon and Stewart believed that Cuthbert was encroaching on a "coke

Gissentanner gave several conflicting reports to investigators, all of which Kirnon's counsel raised during cross-examination. At first, Gissentanner told police that he was not at the scene of the crime, but had heard the shots. (*Id.* at 103.) After police told Gissentanner that another witness placed him at the scene, Gissentanner admitted to being present during the shooting. (*Id.* at 108.) In his third version, Gissentanner identified Kirnon as one of the shooters. (*Id.* at 114–15.) Finally, when interviewed by an investigator working for the defense, Gissentanner stated that he did not see Kirnon with a weapon. (*Id.* at 125–27.) Gissentanner did testify, however, that Kirnon had spoken with him several times while both were in jail. (*Id.* at 128.) Gissentanner testified that he was afraid of Kirnon and complied with Kirnon's request to alter his story in light of this fear. (*Id.* at 100.)

Finally, Kirnon's girlfriend at the time of the shooting testified that she reached out to homicide investigators while angry with Kirnon for alleged infidelity. (Trial Tr. vol. 5, 59–63, Oct. 31, 2003.) Additionally, on cross, Fielding testified to making a conflicting statement to Kirnon's investigator. Fielding told the investigator that her original statement to homicide detectives was not true. (*Id.* at 62–63.)

house" in North Philadelphia that Kirnon and Stewart controlled. (*Id.* at 19–21.) After approximately ten minutes of arguing, Johnson saw Kirnon, Stewart, and the other man remove automatic firearms from their waists and start shooting. (*Id.* at 21–22.) Johnson testified that he heard approximately twenty shots fired; he was shot eight times. (*Id.* at 24.) Johnson also stated that he was not carrying a weapon on the night of the incident and was unaware as to whether Cuthbert was armed. (*Id.* at 45.)

Danny Gissentanner, a second eyewitness to the incident, also testified. Gissentanner stated that he was conversing with Johnson and Cuthbert until Kirnon and his group approached. (*Id.* at 82–83.) Gissentanner recalled overhearing the men yelling, and noted that the shooting began suddenly. (*Id.* at 85.) Further, Gissentanner stated that neither Johnson nor Cuthbert fired any shots in Kirnon's direction, although he did testify to removing a weapon from Johnson's waist after the shooting because he feared that Johnson would face criminal charges. (*Id.* at 93–94.) Ballistics confirmed that this gun was not discharged during the exchange. Gissentanner viewed this altercation from approximately seven feet away. (*Id.* at 85.)

Finally, Christine Fielding, Kirnon's girlfriend at the time of the shooting, testified that Kirnon had called her on the night of the incident and told her that he had been involved in a shooting. (Trial Tr. vol. 5, 55, Oct. 31, 2003.) At first, Kirnon called Fielding to let her know he was "having some problems" and that he would explain the problems when he arrived home. (*Id.*) At home, Kirnon told Fielding that he shot at Johnson and Cuthbert and that he believed he had "hit a guy." (*Id.*) The next day, Fielding stated that Kirnon said he received a phone call informing Kirnon that the man he shot at had died.

(*Id.*) Fielding testified that Kirnon said he decided to go "on the run because he knew police were looking for him." (*Id.*)

This evidence supports the Superior Court's factual determinations and precludes the court from finding that the Superior Court was "objectively unreasonable" when making its factual determinations. Because the I find the Superior Court did not base its decision on unreasonable factual determinations, § 2254(d)(2) does not provide Kirnon with an avenue for habeas relief.

## IV. Conclusion

For the reasons stated above, the court finds that claims I–VII are procedurally defaulted. Kirnon's failure exhaust claim V and failure to comply with Pennsylvania Rules of Appellate Procedure with respect to claims I–IV, VI and VII constitute independent and adequate procedural grounds that bar habeas review. Additionally, the court finds that the Superior Court's review of Kirnon's sufficiency claim was not contrary to or an unreasonable application of the *Jackson* standard under § 2254(d)(1) or based on an unreasonable determination of the facts under § 2254(d)(2). As such, claims VIII and IX are denied. Accordingly, the court finds that Kirnon is not entitled to habeas corpus relief.

█ I must now determine if I should issue a certificate of appealability. A court may issue a certificate of appealability only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires that the defendant "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). According to the Supreme Court,

When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Reasonable jurists could not disagree about petitioner's procedural default and his failure to show either cause and prejudice or a miscarriage of justice. Therefore, the court will not issue a certificate of appealability with respect to claims I–VII.

Additionally, the court has determined that on the basis of the record before the court, petitioner's remaining claims (VIII and IX) are without merit. The court is persuaded that reasonable jurists would not find this assessment debatable or wrong. Therefore, defendant has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue with respect to claims VIII and IX. An appropriate order follows.

**Order**

And now, this 17th day of December 2008, upon careful consideration of Jamie Kirnon's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, the government's and petitioner's responses, the Report and Recommendation of United States Magistrate Judge Elizabeth T. Hey, and petitioner's objections thereto, it is hereby **ORDERED** that:

1. Petitioner's objections are **OVERRULED;**

2. The Recommendation of United States Magistrate Judge Elizabeth T. Hey is **APPROVED;**

3. The petition for writ of habeas corpus is **DISMISSED** in part and the balance **DENIED;**

4. The Clerk shall **CLOSE** this case for statistical purposes; and

5. Petitioner having failed to make a substantial showing of the denial of a constitutional right, there is no ground to issue a certificate of appealability.

Jamie Kirnon

v.

MICHAEL KLOPOTOSKI, et al.[1]

### *REPORT AND RECOMMENDATION*

ELIZABETH T. HEY, United States Magistrate Judge.

This is a *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by an individual currently incarcerated at the State Correctional Institution at Dallas, Pennsylvania. For the reasons that follow, I recommend that the petition be denied.

### *FACTS AND PROCEDURAL HISTORY:*

Kirnon is serving a life sentence for the first degree murder of Darris Cuthbert, as

---

**1.** At the time Kirnon filed his petition, James Wynder was the Superintendent of SCI—Dallas, and Kirnon properly named Mr. Wynder as the respondent. Since that time, Mr. Wynder has been succeeded by Michael Klopotoski as Superintendent. Therefore, I have re-placed Mr. Klopotoski as the respondent in this case. *See* Rule 2(a) of the Rules Governing Section 2254 Cases (requiring the state officer with current custody to be named as the respondent).

well as consecutive sentences on related charges. The Superior Court set forth the relevant facts as follows:

> Testimony at trial revealed that on November 18, 1998, [Kirnon] and another man engaged Darius [sic] Cuthbert and his friend Omar Johnson in a combative conversation at the intersection of Colorado Street and Susquehanna Avenue in Philadelphia. Trial Court Opinion, 1/29/04, at 1. An argument involving the sale of drugs ensued between the two groups of men. *Id.* at 2. Mr. Johnson testified that [Kirnon] and the other man each pulled out a nine-millimeter handgun, the other man fired the first shot, and appellant then began firing his weapon. *Id.*
>
> Danny Gissentanner, a friend of both Mr. Cuthbert and Mr. Johnson who was nearby at the time, testified that after the shooting he immediately determined that Mr. Cuthbert was dead, proceeded to remove a handgun belonging to Mr. Johnson from the scene and place it in the trunk of his Nissan Maxima, and then attempted to take Mr. Johnson to the hospital. *Id.* The police arrived and assisted in taking Mr. Cuthbert and Mr. Johnson to Temple Hospital, where Mr. Johnson was treated for eight gunshot wounds and Mr. Cuthbert was pronounced dead as a result of his five gunshot wounds. *Id.* at 2–3.
>
> Police officers recovered Mr. Johnson's handgun from the Nissan Maxima, and ballistics showed that no casings had been ejected from the weapon. *Id.* at 2. Crime scene technicians arrived, photographed the scene, collected evidence, and determined that all of the fired casings were from nine-millimeter firearms. *Id.* at 3.
>
> Thereafter, Mr. Gissentanner identified [Kirnon] as one of the shooters, an arrest warrant was issued, and [Kirnon] was eventually arrested. *Id.*

*Commonwealth v. Kirnon,* 604 EDA 2004, at 1–3, 872 A.2d 1272 (Pa.Super. Jan. 13, 2005).

On November 4, 2003, the jury found Kirnon guilty of first degree murder, aggravated assault, criminal conspiracy, carrying a firearm on a public street, and possession of an instrument of crime. *N.T.* 11/4/03 at 3–4. After the penalty phase of the trial, the jury sentenced Kirnon to life imprisonment on the murder charge. *N.T.* 11/5/03 at 83. On December 22, 2003, the Honorable Gary Glazer, before whom the case was tried, formally imposed the life sentence for the murder charge, as well as consecutive sentences of 72–144 months for aggravated assault, and 42–84 months for criminal conspiracy. No further penalty was imposed for the firearms violations. *N.T.* 12/22/03 at 4.–5.

Kirnon filed a timely appeal in the Pennsylvania Superior Court, arguing that the evidence was insufficient to support the verdicts and the verdicts were against the weight of the evidence. On January 13, 2005, the Superior Court affirmed the judgment of sentence. *Commonwealth v. Kirnon,* 604 EDA 2004, 872 A.2d 1272 (Pa.Super. Jan. 13, 2005). Kirnon did not seek discretionary review in the Pennsylvania Supreme Court.

On January 13, 2006, Kirnon filed a *pro se* petition pursuant to Pennsylvania's Post Conviction Relief Act, ("PCRA"), 42 Pa. C.S.A. §§ 9541–9551, claiming that the evidence was insufficient to sustain the firearms conviction and insufficient to support the murder conviction because the Commonwealth failed to establish that Kirnon had the specific intent to kill; the prosecutor impermissibly referred to Kirnon as a "black drug dealer" and "murderer" in his closing, and presented perjured testimony; counsel was ineffective for failing to strike a juror during voir dire, impeach the Commonwealth's chief witness, utilize statements to support self defense, and failing

to properly cross examine officers regarding the gun recovered; Kirnon was denied his rights to consult with Trinidadian consular officers under the Vienna Convention; and the trial court erred in charging the jury on flight to avoid prosecution and the elements of the degrees of murder, and failing to properly charge on self defense.[2]

Counsel was appointed to represent Kirnon in pursuing his PCRA petition, but after reviewing the file, appointed counsel filed a *Finley* letter.[3] On October 5, 2006, the PCRA Court dismissed the petition pursuant to *Finley. Commonwealth v. Kirnon,* May Term 2001, No. 0374, 2006 WL 5429262 (Phil.C.C.Pl. Oct. 5, 2006) (Glazer, J.).

Kirnon filed a timely appeal in the Pennsylvania Superior Court. In his Statement of Matters Complained of on Appeal, Kirnon presented the following issues: the court erred in dismissing the PCRA petition without conducting an independent review of the record, without ruling on Kirnon's motion for change of appointed counsel and without ruling on Kirnon's objections to the notice to dismiss; PCRA counsel was ineffective for failing to list each of Kirnon's issues, failing to independently review the record, and failing to interview and consult with Kirnon; the evidence was insufficient to sustain the firearms convictions; trial counsel was ineffective for failing to object to the prosecutor's reference to Kirnon as

a "black drug dealer and murderer," failing to strike a juror during voir dire, failing to impeach the Commonwealth's chief witness, failing to properly cross examine two detectives, failing to utilize certain testimony which supported self defense, and failing to request a self-defense instruction; the state violated the Vienna Convention; the prosecutor knowingly used perjured testimony and made improper remarks during closing; and the trial court erred by giving a charge on flight to avoid prosecution, misstating the law in its charge on murder and conspiracy, and in failing to give a "reasonable doubt defense instruction." *See Commonwealth v. Kirnon,* No. 374, January Term, 2005, Statement of Matters Complaint [sic] of Appeal (Oct. 19, 2006).

On July 24, 2007, the Superior Court affirmed the denial of PCRA relief, finding that Kirnon's failure to abide by Rules 2116 and 2119 of the Pennsylvania Rules of Appellate Procedure resulted in the waiver of the bulk of Kirnon's appellate issues.[4] The only issues that the Superior Court addressed on the merits dealt with the alleged ineffectiveness of PCRA counsel for failing to communicate with Kirnon. The Superior Court rejected these issues, finding that counsel had fulfilled the requirements imposed by *Finley* in preparing her no merit letter and requesting to withdraw from the case. *Commonwealth v. Kirnon,* 3235 EDA 2006, 935 A.2d 15 (Pa.Super. Jul. 24, 2007).[5]

---

2. Kirnon also couched his prosecutorial misconduct and court error claims in terms of ineffective counsel.

3. Pursuant to *Commonwealth v. Finley,* 379 Pa.Super. 390, 550 A.2d 213 (1988), appointed counsel in a post-conviction proceeding may be given leave to withdraw upon the submission of a "no merit" letter that details the nature and extent of his review of the case, lists each issue the petitioner wished to have reviewed, and explains his assessment that the case lacks merit. The court must

also conduct an independent review of the record and must agree with counsel that the petition is merciless before dismissing the petition.

4. A discussion of these rules is contained later in this Report. See infra at 10–12.

5. In its opinion, the Superior Court lists fourteen issues and makes reference to the fact that Kirnon presented his issues in two pages. Review of Kirnon's Notice of Appeal reveals that he presented twenty-two claims in five

On August 6, 2007, Kirnon sought reargument in the Superior Court. On September 28, 2007, the Superior Court denied Kirnon's request for reargument. Kirnon did not seek review in the Pennsylvania Supreme Court.

On October 22, 2007, Kirnon filed this petition for habeas corpus raising nine issues: [6]

1. The state created an impediment to Petitioner's sixth amendment right to counsel through consular representation by violating the Vienna Convention;

2. The trial court erred in charging the jury on the elements of flight to avoid prosecution when Petitioner was not charged with that offense, and trial counsel rendered ineffective assistance of counsel in not objecting to such a charge;

3. Trial counsel rendered ineffective assistance of counsel for failing to impeach chief Commonwealth witness Omar Johnson with prior inconsistent statements;

4. Trial counsel rendered ineffective assistance of counsel for failing to object and move for a mistrial when, in summation, the prosecutor referred to Petitioner as a black drug dealer and murderer;

5. Prosecutorial misconduct for using racially or ethnically based prosecutorial arguments;

6. The prosecution violated Petitioner's sixth and fourteenth amendment rights by knowingly eliciting and using the perjured testimony of Daniel Gissentanner;

7. Trial and direct appeal counsel rendered ineffective assistance of counsel for failing to challenge the inconsistent statements made by Commonwealth witness Danny Milton, aka Daniel Gissentanner;

8. The evidence was insufficient to sustain a conviction for firearms violations where the evidence of such was based on the perjured testimony and inconsistent statements of Commonwealth witness Danny Milton, aka Daniel Gissentanner;

9. Petitioner was denied due process and equal protection under the sixth and fourteenth amendments to the United States Constitution because the Commonwealth failed to prove first degree murder and related offenses beyond a reasonable doubt based on the above challenged testimony.

On January 18, 2008, the District Attorney filed its response, arguing that the petition is untimely and that the claims are procedurally defaulted. On March 11, 2008, Kirnon filed a response and a memorandum in support of his petition. The District Attorney then filed a sur-reply on March 12, 2008, acknowledging that the petition is timely, and relying exclusively on its default argument.[7]

---

pages. *See Commonwealth v. Kirnon*, No. 374, January Term, 2005, Statement of Matters Complaint [sic] of Appeal (Oct. 19, 2006). It appears that the Superior Court missed pages four and five, because it referred only to the claims contained through the third page of the pleading.

**6.** Although Kirnon's petition was docketed on October 25, 2007, a *pro se* petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court. *Burns v. Morton*, 134 F.3d

109, 113 (3d Cir.1998) (citing *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)). Because Kirnon dated the petition on October 22, 2007, I will assume that he presented it to prison authorities on that date.

**7.** The petition is timely filed. Kirnon's conviction became final on February 12, 2005, when the time for seeking discretionary review in the Pennsylvania Supreme Court expired. *See* Pa. R.A.P. 1113(a) (allowing thirty days for an allocatur petition). Kirnon filed a

694

## DISCUSSION

### A. *Exhaustion and Default (Claims 1–4 and 6–7)*

A petitioner seeking federal habeas relief must comply with several procedural requirements before the federal court can grant relief. Included among these procedural requirements is exhaustion. 28 U.S.C. § 2254(b). This requires the petitioner to give the state courts the opportunity to address his federal claims in the first instance. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition"). Here, Kirnon has presented his claims to the Superior Court in either his direct appeal (claims 8 and 9) or PCRA appeal (claims 1 through 7). Thus, the claims are exhausted for purposes of habeas review.

The next procedural hurdle is default. It is not enough that the petitioner present his claims to the state court. He must also comply with the state's procedural rules in presenting his claims, thereby giving the state courts a full and fair opportunity to address them. "[I]f the final state court presented with a federal claim refuses to decide its merits based on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence." *Sistrunk v. Vaughn,* 96 F.3d 666, 673 (3d Cir.1996) (citing *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *see also Lambrix v. Singletary,* 520 U.S. 518, 523, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)

("[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). The District Attorney raises this argument—that Kirnon's violation of state procedural rules provides an adequate and independent ground supporting the state courts' denial of relief—in urging the federal court not to reach the merits of Kirnon's claims. *See* Resp. at 8–9.

■■■■■ A decision based on a state procedural rule is considered independent if it does not rely on the merits of the federal claim or rest primarily on federal grounds. *Harris v. Reed,* 489 U.S. 255, 260, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see also Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). "[A] state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed,'" *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), and the rule "speaks in unmistakable terms." *Doctor v. Walters,* 96 F.3d 675, 683 (3d Cir.1996). Thus, the procedural disposition must comport with similar decisions in other cases so there is a firmly established rule that is applied in a consistent and regular manner "in the vast majority of cases." *Banks v. Horn,* 126 F.3d 206, 211 (3d Cir.1997) (quoting *Dugger v. Adams,* 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989)).

Here, Kirnon's sufficiency issues (claims 8 and 9) were fully briefed on direct appeal and addressed on the merits. Therefore, these claims are not defaulted. However, while Kirnon raised claims 1 though 7 in

PCRA petition 335 days later, tolling the habeas limitations period. The limitations period resumed running on October 28, 2007, when the time for seeking review of the Superior Court's decision expired. *See Satterfield*

*v. Johnson,* 434 F.3d 185, 191 (3d Cir.2006) (limitations period tolled during motion for reconsideration). Because Kirnon filed this petition on October 22, 2007, it is timely filed.

his PCRA appeal, these claims were not addressed on the merits by the Pennsylvania Superior Court. Rather, the Pennsylvania Superior Court found that Kirnon waived most of the issues he raised.[8] The Superior Court decided that Kirnon waived these issues by failing to comply with Pennsylvania Rules of Appellate Procedure 2116 and 2119, and it quoted both the rules and relevant case law at length in its opinion:

> The Pennsylvania Rules of Appellate Procedure provide guidelines regarding the required content of an appellate brief as follows:
>
> **Rule 2116. Statement of Questions Involved (a) General rule.** The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts, or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree **mandatory,** admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.
>
> \* \* \*
>
> Pa.R.A.P. 2116 (emphasis added). Further, Rule 2119 provides:
>
> **Rule 2119. Argument**
>
> **(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as deemed pertinent.

Pa.R.A.P. 2119(a). *See also Commonwealth v. Hakala,* 900 A.2d 404 (Pa.Super.2006), *appeal denied,* 589 Pa. 737, 909 A.2d 1288 (2006) (stating failure to offer analysis or case citation in support of relief results in waiver).

"All claims for relief must be set out in the brief and not merely incorporated by reference." *Commonwealth v. Lambert,* 568 Pa. 346, 356 n. 4, 797 A.2d 232, 237 n. 4 (2001). "[A]n appellate brief is simply not an appropriate vehicle for the incorporation by reference of matter appearing in previously filed legal documents." *Commonwealth v. Rodgers,* [413 Pa.Super. 498], 605 A.2d 1228, 1239 (Pa.Super.1992) *appeal denied,* 532 Pa. 655, 615 A.2d 1311 (1992).

> Regarding claims of ineffectiveness:
>
> [T]o succeed on an allegation of appellate counsel's ineffectiveness—the only claim over which the PCRA court retains cognizance—a post-conviction petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard. . . .

*Commonwealth v. D'Amato,* 579 Pa. 490, 500, 856 A.2d 806, 812 (2004) (internal citations omitted). "[A]n underdeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to relief."

*Commonwealth v. Bracey,* 568 Pa. 264, 273 n. 4, 795 A.2d 935, 940 n. 4 (2001).

Instantly, the defects in Appellant's brief are substantial. Appellant's state-

---

**8.** The only issues addressed by the Superior Court on the merits concerned PCRA counsel's alleged failure to communicate with Kir-non. These issues are not raised in the current federal petition.

ment of questions involved is two pages long. Appellant fails to provide us with adequate argument for all but three of his issues. Specifically, most of the argument advanced by Appellant include bald assertions of error and references to his version of the facts expressed as legal conclusions. For his claims of ineffective assistance of trial and appellate counsel, Appellant also fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims. *See id.* Moreover, Appellant provided no argument at all for seven of his claims; instead, Appellant attempted to incorporate by reference the argument from his PCRA petition. *See Lambert, supra; Rogers [Rodgers ], supra.* As such, Appellant has waived these underdeveloped issues.

*Commonwealth v. Kirnon,* 3235 EDA 2006, at 6–9, 935 A.2d 15 (Pa.Super. Jul. 24, 2007).

Clearly the Superior Court, the highest court to have addressed Kirnon's claims, declined to reach the federal questions involved, relying instead on Rules 2116 and 2119 of the Pennsylvania Rules of Appellate Procedure. As quoted by the Superior Court above, both Rules 2116 and 2119 "speak in unmistakable terms," and the cited state caselaw treats the rules uniformly as mandatory. In addition, the judges of this district have held that state court decisions resting on Rules 2116 and 2119 of the Pennsylvania Rules of Appellate Procedure constitute independent and adequate state grounds, resulting in the procedural default of the underlying claims. *See Williams v. Folino,* No. 07–1099, 2008 WL 336306, at *5 (E.D.Pa. Feb. 4, 2008) (Gardner, J.) (failure to comply with the briefing requirement of Pa. R.A.P. 2116 results in default); *Washington v. Patrick,* No. 05–6643, 2007 WL 3231705, at *1 (E.D.Pa. Oct. 30, 2005) (Pollak, J.) (finding Rule 2119 independent and adequate to support a default); *Boggs v. Diguglielmo,* 2006 WL 563025, at *3 & n. 7 (E.D.Pa. Mar. 6, 2006) (Brody, J.) (because petitioner's state claim did not adhere to Pa. R.A.P. 2119(a) which requires detailed legal argument, claim procedurally defaulted on habeas review). Thus, Kirnon's habeas claims 1 through 4, 6 and 7 are defaulted. For the reasons stated in the margin, I will except claim 5 from this analysis.[9]

■ In order for the federal court to address the merits of a procedurally defaulted claim, the petitioner must establish cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000) (quoting *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999)); *see also Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The "cause and prejudice" standard applies whether

**9.** As previously mentioned, the Superior Court on PCRA appeal only considered the first fourteen of Kirnon's twenty-two collateral appellate claims. This appears to be the result of error in missing the last two pages of Kirnon's Notice of Appeal. All but one of the claims that Kirnon presents in his present habeas petition are contained in the fourteen claims listed by the Superior Court. *See Commonwealth v. Kirnon,* 3235 EDA 2006, at 4–6, 935 A.2d 15 (Pa.Super. Jul. 24, 2007). The remaining claim, alleging prosecutorial misconduct for using racially based arguments, was numbered 21 in Kirnon's Superior Court filing and is claim 5 in the present petition. Like the claims found waived by the Superior Court, Kirnon failed to comply with the court's appellate rules in presenting the claim because he included no discussion, argument, or citation of authorities as required by Rule 2119. However, because the Superior Court did not specifically find the claim waived, I hesitate to conclude that the claim is defaulted. I will therefore address the merits of claim 5 below.

the default in question occurred at trial, on appeal, or on state collateral attack. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts*, 228 F.3d at 192–93 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). With regard to the prejudice requirement, a habeas petitioner must prove " 'not merely that the errors at … trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage.' " *Id.* at 193 (quoting *Carrier*, 477 U.S. at 494, 106 S.Ct. 2639). This standard essentially requires the petitioner to show that he was denied "fundamental fairness." *Id.*

In the alternative, if the petitioner fails to demonstrate cause and prejudice for the default, the federal court may also consider a defaulted claim if the petitioner can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 748, 111 S.Ct. 2546. In order to satisfy this exception, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In other words, a petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Id.*

In his reply to the response, Kirnon claims that his PCRA counsel's filing a *Finley* letter provides cause to excuse his default. According to Kirnon's argument, the *Finley* letter deprived him of the opportunity to develop his claims in the lower court, deprived him of counsel on appeal, and resulted in the waiver of his appellate claims. The District Attorney points out that this amounts to a claim of ineffective assistance of PCRA counsel to provide cause to excuse the default. The District Attorney is correct that, because the ineffectiveness of PCRA counsel does not rise to a constitutional violation, *see Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), such a claim cannot provide cause to excuse a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 755, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

To the extent Kirnon contends that the default should be excused because he reasonably believed he had complied with the appellate rules and should not be penalized for his *pro se* status, the argument also fails. *See Caswell v. Ryan*, 953 F.2d 853, 862 (3d Cir.1992) (state court's failure to "bend the rules" for *pro se* appellant does not constitute cause); *White v. Carroll*, 416 F.Supp.2d 270, 282 (D.Del.2006) ("lack of legal knowledge fails to constitute cause"); *see also Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir.2002) (mere inadvertence does not constitute cause). Thus, Kirnon has failed to establish any cause to excuse his default.

Similarly, Kirnon has not established that a failure to consider his claims will result in a fundamental miscarriage of justice. As previously explained, in order to demonstrate a fundamental miscarriage of justice, a petitioner must make a showing of actual innocence. *Schlup*, 513 U.S. 298, 115 S.Ct. 851. In this context, actual innocence means factual innocence, not mere legal sufficiency. *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). Here, Kirnon has not supplemented his petition with any

evidence of "factual innocence." In his claims he challenges the performance of his attorneys and the prosecutor, as well as certain evidentiary and instruction rulings of the trial court. None of these claims asserts his innocence.[10] Accordingly, Petitioner has failed to demonstrate that the failure to address his defaulted claims will result in a "fundamental miscarriage of justice." Thus, the first seven claims listed in his habeas petition remain defaulted.

### B. Sufficiency (Claims 8 and 9)

In his petition, Kirnon challenges the sufficiency of the evidence to support his conviction for firearms violations (claim eight) and first degree murder and related claims (claim nine), arguing that the testimony of the two eyewitnesses and a former girlfriend was inconsistent with and contradictory to other statements made by these witnesses. In his direct appeal, Kirnon challenged the sufficiency of the evidence to support the verdicts, making the same arguments regarding witnesses' credibility. As detailed below, the Superior Court rejected these arguments on the merits. These claims are exhausted and not defaulted for purposes of habeas review, and I will proceed to address them.

On direct appeal, after reviewing the elements of each of the crimes of which Kirnon was convicted, the Superior Court concluded that the evidence was sufficient to support the verdicts.

> The evidence, as produced at trial, clearly established that appellant was not only present at the scene of the murder, but that he, along with his associate, actively participated in the shooting of a rival drug dealer after an argument concerning their illegal activities. Witnesses to the shooting, including a

victim of the shooting, testified that appellant fired numerous shots from the nine-millimeter handgun that he had pulled from his waist concurrently with his associate. Therefore, the charges of murder, aggravated assault, criminal conspiracy, carrying a firearm on a public street, and possessing an instrument of crime, were well supported at trial. Viewing all the evidence in the light most favorable to the Commonwealth, we find that there was sufficient evidence for the jury to conclude that [Kirnon] committed the charged crimes.

*Commonwealth v. Kirnon,* 604 EDA 2004, at 5–6, 872 A.2d 1272 (Pa.Super. Jan. 13, 2005). After reviewing the evidence, I agree that the evidence was sufficient to support the verdicts.

Principles of due process dictate that a person can be convicted of a crime only by proof of every element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In reviewing challenges to the sufficiency of the evidence, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Cuyler,* 723 F.2d 1077, 1083–84 (3d Cir.1983) (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781) (emphasis in original). Moreover, the Antiterrorism and Effective Death Penalty Act of 1996 has limited a habeas court's role in reviewing a claim that the evidence adduced at trial was insufficient to support a conviction. Under 28 U.S.C. § 2254(d)(1), a writ of habeas corpus may be issued for eviden-

---

**10.** Kirnon's Vienna Convention claim is also devoid of any innocence allegation, and is subject to the same default analysis as his

other claims. *See Sanchez–Llamas v. Oregon,* 548 U.S. 331, 350–57, 126 S.Ct. 2669, 2682–86, 165 L.Ed.2d 557 (2006).

tiary insufficiency only if the state courts have unreasonably applied either the *Jackson* "no rational trier of fact standard," or the state equivalent of the *Jackson* standard. *See Smith v. Vaughn*, No. 96–8482, 1997 WL 338851, at *7 (E.D.Pa. June 17, 1997).

At trial, Omar Johnson, who was also shot during the November 18, 1998 incident, testified that Kirnon and Rafael Stewart had a dispute with Darris Cuthbert because they believed that Cuthbert was trying to take over a "coke house" in North Philadelphia, operated by Kirnon and Stewart.[11] *N.T.* 10/30/08 at 18–19. Prior to the shooting, Johnson, Darris Cuthbert, and Danny Gissentanner were talking on the corner of Colorado and Susquehanna. *Id.* Johnson testified that Kirnon, Stewart, and an unidentified man approached the group, walking down Colorado Street. *Id.* at 50. Kirnon and Stewart were asking Cuthbert about the drug house in North Philadelphia. After a five-to-ten minute argument, Stewart, Kirnon, and the unidentified man pulled automatic weapons and started shooting. *Id.* at 20–23, 51–52. Stewart was the first to fire. *Id.* at 23. Johnson testified that he heard about twenty shots. *Id.* at 24, 51. He was shot eight times. *Id.* at 24, 56. According to the pathologist, Cuthbert was shot five times. *N.T.* 10/31/03 at 13–14. Johnson also stated that he did not have a gun that night and did not see Cuthbert pull a gun that night. *N.T.* 10/30/03 at 44–45.

The testimony of Danny Gissentanner, a witness to the shooting, was largely consistent with Johnson's. He referred to the argument about the North Philadelphia drug house. *Id.* at 81. He said that on the night in question Kirnon and Stewart approached the corner of Susquehanna and Colorado, but made no mention of a third man. *Id.* at 82–83. Gissentanner said that both Kirnon and Stewart pulled automatic weapons from their waistbands and started shooting. *Id.* at 85. He also stated that neither Johnson nor Cuthbert pulled a weapon, although he (Gissentanner) did take a gun from Johnson after the shooting and put it in his car. *Id.* at 93–94. The police recovered the gun from Gissentanner's car and confirmed that none of the casings at the scene had been ejected from that gun. *N.T.* 10/30/03 at 72–73, 10/31/03 at 35–38.

Christine Fielding, Kirnon's girlfriend at the time of the shooting, testified that on November 18, 1998, Kirnon called her to tell her that he would be home late. *N.T.* 10/31/08 at 48–50. When he arrived home, he told her that he had been in a shootout in North Philadelphia and thought that someone "got hit." *Id.* When giving her testimony, she stated that Kirnon never stated that he shot anyone. *Id.* at 50. However, in her statement to the police, she stated that Kirnon admitted to her that he had shot someone and the victim had died. *Id.* at 55.

This evidence clearly supports Kirnon's conviction utilizing the *Jackson* standard. Kirnon's contention is that these witnesses were not credible because their testimony was undermined by prior inconsistent statements. However, credibility is beyond the scope of habeas review. The Supreme Court has cautioned that state court credibility findings may not be redetermined on habeas review. *See Marshall*

---

11. Throughout the trial transcript, people are referred to by both their names and nicknames/aliases. For ease, I will use their names as used at trial in this Report. Their nicknames and aliases are as follows:

Jamie Kirnon—"Dexter" or "Dex," Dexter Lawrence
Darris Cuthbert—"D"
Omar Johnson—"Buddha," Marlon Wilson
Danny Gissentanner—Danny Milton
Rafael Stewart—"T.J."

*v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) ("federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court"). In addition, after reviewing the trial testimony, it is clear that each of these witnesses was questioned regarding his or her prior statements. *N.T.* 10/30/03 at 53–56 (Johnson's statement to police after the incident); *Id.* at 99–101, 108–114, 124–128 (Gissentanner's prior statements to police and defense investigator); 10/31/03 at 54–56 (Fielding's prior statement). The jury, as fact-finder and judge of credibility, was privy to these inconsistencies, but chose to believe this testimony. Guided by *Marshall,* I have no power to undermine the jury's credibility determination.[12]

### C. *Prosecutorial Misconduct (Claim 5)*

 Finally, Kirnon argues in claim 5 that his due process rights were violated when the prosecutor made race-based arguments in closing. *See* Pet.'s Mem. at 3–5. The prosecutor made the following statement during his summation: "This case reflects a known truth exhibited by what you heard in this courtroom: drugs, money, guns, and young men in the city, mostly black, leading to a confrontation, violence, and death." *N.T.* 10/31/03 at 128–29.

This is indeed a deplorable injection of race into the trial. Nonetheless, the question on habeas review is whether this statement "infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Thus, the reviewing court must assess "the severity of the conduct, the effect of [any] curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton,* 255 F.3d 95, 107 (3d Cir.2001).

While I reiterate that the reference to "young men in the city, mostly black," had absolutely no place at trial, I cannot conclude on the record as a whole that the trial was unfair. The prosecutor's closing argument was lengthy, encompassing thirty-two transcript pages after three days of testimony. *N.T.* 10/31/03 at 115–46. Kirnon has not pointed to any other portion of the trial record where race was made an issue. Therefore, when weighed against the evidence, the prosecutor's one-time mention of race in closing did not call the verdict into question.

### CONCLUSION

For the reasons stated in this Report, I find that Kirnon's claims 1 through 4, 6 and 7 are procedurally defaulted. His failure to comply with Pennsylvania's appellate rules resulted in a waiver of the claims in the state court and provides an independent and adequate basis to support a procedural default. He has given the court no reason to excuse that default. Kirnon's eighth and ninth claims combine an attack

---

**12.** Kirnon correctly points out that Omar Johnson was not cross-examined on a statement he gave to police on June 11, 2002, in which he stated that Stewart "pulled [his gun] out and he shot [Cuthbert] and [Cuthbert] went down. Then [Kirnon] started shooting at me...." *See* Pet's Mem. at 26–27 (referring to Ex. H (Tr. ex. C53) Investigative Interview Record of Marlon Wilson, June 11, 2002). However, Johnson did not affirmatively testify that Kirnon shot Cuthbert, rather he testified that Stewart "shot first," followed by Kirnon, and that Cuthbert was hit first followed by himself (Johnson). *N.T.* 10/30/03 at 23–24. It was Gissentanner who testified that both Stewart and Kirnon pulled their weapons out and "started shooting." *Id.* at 85. Therefore, while it would no-doubt have been helpful to the defense to point out that Johnson told the police in June, 2002, that it was Stewart who shot Cuthbert, such questioning would not have precluded a rational jury from finding Kirnon guilty.

on the sufficiency of the evidence with an attack on the credibility of the witnesses. As explained, the evidence was sufficient to support the verdict and the credibility determinations made by the fact finder are beyond habeas review. Finally, I conclude that Kirnon's challenge to the prosecutor's remarks is meritless. Although the prosecutor's statement unnecessarily injected race into the trial, the statement did not, in the context of the entire trial, infect the trial with unfairness. Thus, Kirnon is not entitled to habeas corpus relief.

Therefore, I make the following:

### RECOMMENDATION

AND NOW, this 27th day of June, 2008, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be denied. There has been *no* substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability. Petitioner may file objections to this Report and Recommendation. *See* Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.